# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

ELIZABETH OYER,
*Petitioner,*

v.

MERIT SYSTEMS PROTECTION BOARD,
*Respondent,*

On Petition for Review
Merit Systems Protection Docket No. DC-0752-25-2372-I-1

## OPPOSED MOTION PURSUANT TO FEDERAL RULE OF
## APPELLATE PROCEDURE 18 FOR STAY PENDING REVIEW

Joshua M. Salzman
Webb Lyons
Elena Goldstein
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jsalzman@democracyforward.org

*Counsel for Petitioner*

# TABLE OF CONTENTS

STATEMENT ........................................................................4

    A. Ms. Oyer's unlawful termination ..................................4

    B. Ms. Oyer challenges her unlawful removal before the MSPB ....8

ARGUMENT .......................................................................12

I.   Ms. Oyer Is Likely to Demonstrate That the MSPB Abused Its Discretion in Substantially Delaying Ms. Oyer's Ability to Have Her Claim Heard on The Merits ......................................13

    A. DOJ's only defense of Ms. Oyer's termination will remain legally frivolous regardless of the outcome of *Jaroch* ...............13

    B. This Court has jurisdiction to provide relief.............................21

III.  The Equitable Factors Also Favor Relief........................................26

CONCLUSION .....................................................................27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF INTEREST

ADDENDUM

# TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Alvarez v. Becerra*, No. 21-2317, 2023 WL 2908819 (4th Cir. Apr. 12, 2023) ........................................................................................ 15

*Balouris v. U.S. Postal Serv.*, 277 F. App'x 980 (Fed. Cir. 2008) ........... 12

*Barry v. Barchi*, 443 U.S. 55 (1979) ....................................................... 16

*Branti v. Finkel*, 445 U.S. 507 (1980) .................................................... 26

*Brown v. Dep't of Treasury,* 140 F. App'x 269 (Fed. Cir. 2005) .............. 21

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) ................... 15

*Dept of Commerce v. New York*, 588 U.S. 752 (2019) ............................. 21

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ........................................ 16

*Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234 (2024) ................... 22

*Harris v. Bessent*, 160 F.4th 1235 (D.C. Cir. 2025) ................................ 17

*In re Jadhav*, 795 F. App'x 846 (Fed. Cir. 2020) .................................... 22

*Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748 (2025) ......................... 6

*Kontogeorge v. Off. of Pers. Mgmt.*, 907 F.2d 159 (Fed. Cir. 1990) ......... 22

*Lucia v. SEC*, 585 U.S. 237 (2018) .......................................................... 7

*MacLean v. MSPB*, No. 2023-1000, 2022 WL 17883619 (Fed. Cir. Dec. 23, 2022) ..................................................................................... 21

*Martinez v. MSPB*, No. 25-1387 (Aug. 21, 2025 Fed. Cir.) .................... 24

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................. 16

*Mills v. D.C.*, 571 F.3d 1304 (D.C. Cir. 2009) ....................................... 26

*Morrison v. Olson*, 487 U.S. 654 (1988) ................................................. 14

*Myers v. United States*, 272 U.S. 52 (1926) ........................................... 14

*Nat'l Ass'n of Immigr. Judges v. Owen*, 139 F.4th 293 (4th Cir. 2025) ................................................................................................ 3, 17

*Nken v. Holder*, 556 U.S. 418 (2009) ..................................................... 12

*Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020) ........... 26

*Strausbaugh v. MSPB*, 401 F. App'x 524 (Fed. Cir. 2010) ............... 24, 25

*Umshler v. Dep't of Interior*, 945 F.2d 417 (Fed. Cir. 1991) .................... 21

*Weed v. Soc. Sec. Admin.*, 571 F.3d 1359 (Fed. Cir. 2009) ..................... 23

**Constitutional Provisions**

U.S. Const. art. II, § 2, cl. 2 ........................................................................ 6

**Statutes**

5 U.S.C. § 1201 ................................................................................................ 2

5 U.S.C. § 1202(d) ........................................................................................ 17

5 U.S.C. § 2302 ................................................................................................ 9

5 U.S.C. § 3393(d) .......................................................................................... 5

5 U.S.C. § 7541 ............................................................................................ 5, 9

5 U.S.C. § 7543 ................................................................................ 1, 5, 8, 15

5 U.S.C. § 7703 ................................................................................... 3, 24, 26

28 U.S.C. § 1295(a)(9) ................................................................................. 26

**Regulations**

5 C.F.R. § 1201.29 .............................................................. 2, 10, 14, 20

5 C.F.R. § 1201.113 ................................................................... 3, 22

28 C.F.R. § 0.35 ............................................................................... 5

28 C.F.R. § 1.6 .................................................................................. 5

Exec. Order 14,215 of Feb. 18, 2025, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10,447 (Feb. 24, 2025) ............................... 18

*Improving Performance, Accountability and Responsiveness in the Civil Service,* 91 Fed. Reg. 5580 (Feb. 6, 2026) ................................... 18

**Other Authorities**

Devlin Barrett, *Justice Dept. Official Says She Was Fired After Opposing Restoring Mel Gibson's Gun Rights*, N.Y. Times (Mar. 10, 2025), https://www.nytimes.com/2025/03/10/us/politics/justice-department-mel-gibson.html ............................................................... 19

Emily Ngo, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, Politico (Dec. 6, 2025), https://www.politico.com/news/2025/12/06/trump-immigration-court-judge-purges-00679376 ............................................................... 19

Kristin Wright, *Democrats hold "shadow hearing" on what they call Trump's attacks on the rule of law*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-5355076/democrats-hold-shadow-hearing-on-what-they-call-trumps-attacks-on-the-rule-of-law ............................................................................................ 19

Office of Legal Counsel, DOJ, *Appointment & Removal of Fed. Rsrv. Bank Members of the Fed. Open Mkt. Comm.*, 43 Op. O.L.C. 263 (Oct. 23, 2019) ............................................................... 7

Office of Legal Counsel, DOJ, *The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions with an Administrative Proceeding,* 49 Op. O.L.C. 1 (Sept. 26, 2025), https://www.justice.gov/olc/media/1415466/dl ................................... 18

## INTRODUCTION

When Petitioner Elizabeth Oyer was abruptly terminated from her position as the Pardon Attorney at the U.S. Department of Justice (DOJ), the agency made no pretense of adhering to statutorily mandated procedures. *See generally* 5 U.S.C § 7543(a)-(b). Instead, Ms. Oyer was issued a terse notice that purported to terminate her immediately pursuant to Article II of the Constitution. Add. 21. Yet, DOJ did not even use the procedures that DOJ itself maintains are necessary to effectuate a removal under Article II. Ms. Oyer initiated a proceeding before the Merit Systems Protection Board (MSPB) to challenge this blatant violation of her rights. But though DOJ has no coherent defense of Ms. Oyer's termination, she has been trapped in protracted limbo as the MSPB dismissed her suit for a period of six months, denying her the opportunity to obtain the timely review to which she is constitutionally entitled. Add. 1-3 ("the Dismissal Order").

The violation of Ms. Oyer's rights has its origin in DOJ's recent dubious and repeated practice of terminating employees without observance of the requirements of the Civil Service Reform Act (CSRA) based on the purported exercise of Article II authority. As a result,

several pending MSPB proceedings involve the question of whether the MSPB cannot enforce the requirements of the CSRA when the Attorney General purports to remove an official pursuant to Article II. Two of those cases (collectively *Jaroch*) are now pending before the Board.[1]

The MSPB administrative judge hearing Ms. Oyer's appeal issued an order to show cause why Ms. Oyer's case should not be dismissed without prejudice pending Board resolution of *Jaroch*. Add. 28-29; *see* 5 C.F.R. § 1201.29 (authorizing dismissals without prejudice when fairness, due process, and administrative efficiency outweigh any prejudice to either party). In response, Ms. Oyer explained that while DOJ's Article II argument is deeply flawed in general, it suffers from a case specific flaw as applied to her. Ms. Oyer's termination notice (unlike those in *Jaroch*) was signed only by the *Deputy* Attorney General, not the Attorney General herself. This distinction is significant because—on DOJ's own telling—only the Attorney General can wield the President's Article II removal authority and any attempt by a lower ranking official to effectuate such a removal is, according to DOJ, "void

---

[1] We refer to the body created by 5 U.S.C. § 1201 as "the Board" and the agency overseen by that body as "the MSPB."

*ab initio*." Add. 38, 46. Thus, DOJ's Article II argument is not merely wrong, but self-defeating. Regardless of the outcome of *Jaroch*, Ms. Oyer cannot properly have been removed pursuant to Article II.

The administrative judge nonetheless dismissed Ms. Oyer's proceeding without prejudice for a period of six months, until at least May 20, 2026. Add. 3. The order was issued in the form of an "Initial Decision" and, consistent with the MSPB's own regulations and the terms of the Dismissal Order itself, it has ripened into a "final" Board order that this Court has jurisdiction to review. *See* 5 U.S.C. § 7703(a); 5 C.F.R. § 1201.113.

Ms. Oyer is suffering ongoing irreparable harm as a result of the Dismissal Order. She has not only been illegally deprived of her livelihood, but is now experiencing a continuing violation of her constitutional rights. She should not be forced to remain in protracted limbo while the Board decides a question that is ultimately irrelevant to the resolution of her own appeal.

This delay is all the more troubling because President Trump has compromised the MSPB's impartiality, undermining "the functionality and independence of the MSPB." *Nat'l Ass'n of Immigr. Judges v. Owen*,

139 F.4th 293, 307–08 (4th Cir. 2025), *cert pet. pending*, No. 25-767 (U.S. Dec. 31, 2025). If there is any continuing expectation that wrongfully terminated employees administratively exhaust their claims before an MSPB that is no longer independent, basic fairness demands that they at least have their claims heard promptly.

Because Ms. Oyer is likely to prevail on the merits of her challenge to the Dismissal Order and because the remaining equitable factors are satisfied, this Court should exercise its authority under Federal Rule of Appellate Procedure 18 and stay the Dismissal Order pending merits review. Counsel for both the MSPB and DOJ/OPM have informed us that this motion is opposed.[2]

## STATEMENT

### A. Ms. Oyer's unlawful termination

In April 2022, Petitioner Elizabeth Oyer was appointed as the Pardon Attorney, a career position at DOJ within the senior executive

---

[2] It would be futile, and therefore impracticable, for Ms. Oyer to seek relief from the MSPB. *See* Fed. R. App. P. 18(a)(2). Ms. Oyer attempted to alert the agency of its error via a motion for reconsideration, but the administrative judge failed to acknowledge the submission in any way, thereby making clear that the MSPB is not entertaining further proceedings in No. DC-0752-25-2372-I-1. *See infra* pp. 11-12.

service (SES). Add. 15. The Pardon Attorney is responsible for processing applications for clemency. 28 C.F.R. §§ 0.35, 1.6. Ms. Oyer performed successfully and retained the position after completing the applicable one-year probationary period. *See* 5 U.S.C. § 3393(d). Her performance would be rated as Outstanding for her entire tenure. Add. 15.

Non-probationary SES employees are statutorily entitled to certain protections against arbitrary termination. *See generally* 5 U.S.C. §§ 7541-7543. They may be removed from federal employment "only for misconduct, neglect of duty, malfeasance, or failure to accept a directed reassignment or to accompany a position in a transfer of function." *Id.* § 7543(a). And they may be terminated only after being provided with 30 days advanced written notice of the proposed termination, an opportunity to respond, and a final written decision. *See id.* § 7543(b).

Nonetheless, in March 2025, Ms. Oyer was abruptly terminated without any pretense of compliance with these requirements. Instead, she was issued a terse "Notice of Removal from the Senior Executive Service" that purported to terminate her "from federal service, effective immediately." Add. 21. The notice specified no cause for the removal,

merely stating that the termination was "[p]ursuant to Article II of the Constitution and the laws of the United States." *Id*. The notice was signed by Deputy Attorney General Tood Blanche. *Id*. It was not signed by Attorney General Pamela Bondi.

While the termination notice itself contained no additional explanation, DOJ has, in the course of litigation, elaborated on this theory of Article II removal authority. DOJ begins from the premise that the Pardon Attorney is what the Appointments Clause of the Constitution refers to as an "inferior officer," an official who (unlike a run-of-the-mill employee) exercises "significant authority pursuant to the laws of the United States," but who (unlike a so-called "principal officer" like the Attorney General) has a "superior" other than the President. *Kennedy v. Braidwood Mgmt., Inc.*, 606 U.S. 748, 759-61 (2025) (quotation marks omitted); *see also* U.S. Const. art. II, § 2, cl. 2. DOJ further insists that in almost all cases, "Article II of the Constitution allows the President and heads of departments exercising his power to remove inferior officers without cause" and that any statute providing otherwise violates Article II's grant of authority to the President to control the exercise of executive power. Add. 24.

DOJ's own conception of this Article II theory includes an important limitation. Under the Appointments Clause, inferior officers can only be appointed by "the President, a court of law, or a head of department" such as the Attorney General. *See Lucia v. SEC*, 585 U.S. 237, 244 (2018). Correspondingly, DOJ recognizes that the President and the pertinent Department Head are the only executive branch officials that can exercise the claimed Article II removal authority. As counsel for DOJ put it in recent filings, "an inferior officer at the Department of Justice . . . may *only* be removed by the Attorney General pursuant to her authority under Article II of the Constitution" and "no other individual at the Department of Justice possesses that authority." Add. 35, 43 (emphasis in original). As a result, "the removal of an inferior officer of the Attorney General is, in the absence of her approval, constitutionally *void ab initio*." Add. 38, 46. This concession follows from DOJ's longstanding view that a Department Head's power to remove inferior officers cannot be delegated. *See* Office of Legal Counsel, DOJ, *Appointment & Removal of Fed. Rsrv. Bank Members of the Fed. Open Mkt. Comm.*, 43 Op. O.L.C. 263, 282 (Oct. 23, 2019) ("[W]e have advised that the authority to remove inferior officers may

not be delegated to an agency official other than the department head, or another official constitutionally competent to appoint that officer in the first place.").

## B.   Ms. Oyer challenges her unlawful removal before the MSPB

**1.** Ms. Oyer appealed her removal to the MSPB and requested a hearing before an administrative judge. She asserted a property interest in her continued employment and that her removal, in clear violation of 5 U.S.C. § 7541 and 5 U.S.C. § 7543, deprived her of due process in violation of the Fifth Amendment of the U.S. Constitution. Add. 15-16. She further alleged that her removal violated the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), and constituted a Prohibited Personnel Practice because it was based on DOJ's perception that Oyer was not politically affiliated with the Trump Administration, 5 U.S.C. § 2302(b)(1)(E). Add. 16-17.

The case was assigned to a chief administrative judge ("the CAJ") and DOJ submitted a short Agency File and Narrative Response, in which it confirmed that it was "Deputy Attorney, General Todd Blanch[e]" who "removed Appellant from Federal service and from her

position as Pardon Attorney based on the President's core and inherent authority under Article II of the Constitution." Add. 19.

Ms. Oyer responded by highlighting an array of defects in DOJ's reliance on Article II as justification for its disregard for her rights. Most pertinently for present purposes, she explained that whatever the merit of DOJ's claim of sweeping Article II removal authority in other cases, that argument was self-defeating in Ms. Oyer's case because she had been removed by the Deputy Attorney General, not the Attorney General, who all agree is the only DOJ official who could even conceivably wield the claimed Article II removal authority. Add. 26-27.[3]

**2.** Before Ms. Oyer's CAJ had an opportunity to issue an opinion addressing these Article II issues, a different MSPB chief administrative judge issued decisions in a pair of cases involving immigration judges who were removed by the Attorney General in a purported exercise of Article II authority. *See Brandon Jaroch v. Dep't of Just.*, DA-0752-25-0328-I-1; *Megan Jackler v. Dep't of Just.*, MSPB

---

[3] Ms. Oyer also argued that the MSPB lacks jurisdiction to consider an attack on the constitutionality of the CSRA, that DOJ badly misconstrues that scope of Article II authority to remove inferior officers, and that the Pardon Attorney is not an inferior officer.

Docket No. DA-0752-25-0330-I-1 (collectively *Jaroch*). These decisions rejected DOJ's Article II argument on the ground that MSPB lacks authority to decide a challenge to the constitutionality of the removal protections afforded by chapter 75 of Title 5. Add. 29.

DOJ sought Board review in *Jaroch*, which was granted. Those proceedings are now pending before the Board. There is no set timetable for their resolution.

3. Shortly after Board review was sought in *Jaroch*, Ms. Oyer's CAJ issued an Order to Show Cause as to why Ms. Oyer's appeal should not be dismissed without prejudice to refiling, pursuant to a regulation authorizing dismissals without prejudice "when the interests of fairness, due process, and administrative efficiency outweigh any prejudice to either party." 5 C.F.R § 1201.29(b). The Order to Show Cause suggested that such a dismissal without prejudice might be appropriate because "a potentially dispositive issue in this appeal is pending before the Board." Add. 29.

In response, Ms. Oyer argued (among other things) that even if DOJ prevails in *Jaroch*, it would have "little relevance for this case" because "the *Deputy* Attorney General removed [Ms. Oyer], and the

Agency has identified no statutory or constitutional basis for concluding that a subordinate official like the Deputy Attorney General may unilaterally invoke Article II to bypass the CSRA's protections." Add. 31.

The CAJ nonetheless issued an Initial Decision dismissing Ms. Oyer's appeal without prejudice on the theory that resolution of *Jaroch* will "materially advance the completion of this proceeding." Add. 3. The CAJ dismissed Ms. Oyer's appeal subject to automatic refiling by the Board after a period of six months (*i.e.*, on or around May 20, 2026). *Id.*

The Initial Decision concluded with a "Notice to Appellant" that the Initial Decision would become a final board decision in 35 days unless Board review was sought sooner. It further stated that "[y]ou may obtain [judicial] review of this initial decision . . . after it becomes final." Add. 3, 7.

5. Promptly after the Initial Decision issued, Ms. Oyer moved the CAJ for reconsideration, reiterating that DOJ's Article II defense is self-defeating here. Add. 50-55. The CAJ never even acknowledged that motion, which was still pending more than two months later when the MSPB prepared the Index for filing in this Court. At that point, in

response to an inquiry from the MSPB clerk, Ms. Oyer agreed to have the reconsideration motion returned to her (and, thus, does not appear on the Index).

6. Neither party sought Board review of the Initial Decision. Once the decision became final, Ms. Oyer petitioned for this Court's review.

## ARGUMENT

In considering a motion for stay pending review, this Court considers whether a movant has made a strong showing that she is likely to succeed on the merits, whether the movant will be irreparably injured absent a stay, whether issuance of the stay will substantially injure the other side, and where the public interest lies. *See Balouris v. U.S. Postal Serv.*, 277 F. App'x 980 (Fed. Cir. 2008). Where the federal government is the opposing party, the balance of equities and public interest factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors all support relief.

# I. Ms. Oyer Is Likely to Demonstrate That the MSPB Abused Its Discretion in Substantially Delaying Ms. Oyer's Ability to Have Her Claim Heard on The Merits

## A. DOJ's only defense of Ms. Oyer's termination will remain legally frivolous regardless of the outcome of *Jaroch*

1. The CAJ dismissed Ms. Oyer's appeal without prejudice on the premise that the Board's resolution of *Jaroch* "will materially advance the completion of [Ms. Oyer's] proceeding." Add. 3. That conclusion is profoundly mistaken.

DOJ has defended Ms. Oyer's termination solely on the theory that it constituted an exercise of Article II removal authority that supersedes Ms. Oyer's rights under the CSRA. But DOJ's Article II theory is incoherent on its own terms. After all, it is common ground between the parties that it was the *Deputy* Attorney General who purported to exercise Article II authority to terminate Ms. Oyer. Add. 19 (agency narrative stating that the Deputy Attorney General removed Oyer pursuant to Article II). It is also DOJ's longstanding and unequivocal position that removing inferior officers within DOJ is a non-delegable authority reserved for the Attorney General herself. *See supra* pp. 7-8. Indeed, on DOJ own telling, if Ms. Oyer is an inferior

officer subject to the agency's Article II removal theory, any attempt to remove her by anyone other than the Attorney General is "void *ab initio*." Add. 38, 46.[4]

Under the circumstances, there is no disposition of *Jaroch* that could advance the resolution of Ms. Oyer's case. Even were the Board to provide DOJ with the most sweeping victory possible, it would only establish that the Attorney General has Article II authority to remove an immigration judge without regard for the CSRA. It would do nothing to further any argument that the Deputy Attorney General could remove Ms. Oyer—a position that DOJ itself has repeatedly disclaimed.

2. The "fairness," "due process," and "prejudice" inquiries required under Section 1201.29 also weighed decisively against further delay. It

---

[4] DOJ's general conception of Article II removal authority also is shockingly ahistorical and disregards controlling Supreme Court precedent upholding statutory removal protections for inferior officers, especially those like the Pardon Attorney who are appointed by a Department Head, rather than the President. *See, e.g.*, *Myers v. United States*, 272 U.S. 52, 161 (1926) (explaining that Congress's power to regulate a Department Head's removal of inferior officers is "incidental" to Congress's power to decide whether to authorize the Department Head to appoint the inferior officer in the first place); *Morrison v. Olson*, 487 U.S. 654 (1988) (upholding removal protections of an inferior officer); *id.* at 724 n.4 (1998) (Scalia, J., dissenting) (agreeing that it has "never been the law" that inferior officers must be removable at will).

is undisputed that Ms. Oyer was summarily terminated without regard to her statutory and constitutional right to receive pre-termination review. *See* 5 U.S.C § 7543(b); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) (recognizing a public employee's right to a pretermination hearing because "the significance of the private interest in retaining employment cannot be gainsaid"). The MSPB's dismissal without prejudice compounds the harm resulting from this violation by denying Ms. Oyer access even to timely post-deprivation review.

Under the CAJ's order, Ms. Oyer must wait until at least May 2026 to begin the process of seeking redress for a blatantly unlawful termination that occurred in March 2025. Nor is it even clear that Ms. Oyer's case will proceed in May 2026. If *Jaroch* is not yet resolved, the MSPB might well dismiss Ms. Oyer's suit a second time. *See, e.g.*, *Alvarez v. Becerra*, No. 21-2317, 2023 WL 2908819, at *2 n.3 (4th Cir. Apr. 12, 2023) (describing an "unfortunate cycle" of repeated dismissals without prejudice when the impetus for the original dismissal was unresolved at the time the case was refiled).

It is incompatible with due process to force Ms. Oyer to wait more than fourteen months (and perhaps far longer) for her first opportunity

to receive a hearing of any kind. *See, e.g.*, *Barry v. Barchi*, 443 U.S. 55, 66 (1979) (finding that due process required "a prompt postsuspension hearing, one that would proceed and be concluded without appreciable delay"); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (recognizing that due process requires a hearing at a "meaningful time"). And the delay here is particularly egregious because Ms. Oyer's unlawful termination stripped her not only of her constitutionally protected interest in her job, but also violated her rights as a whistleblower and her right to freedom from political-affiliation discrimination. Add. 15-16.

3. If more were needed, the harm to Ms. Oyer from the CAJ's decision is all the more acute because over the past year, President Trump and Attorney General Bondi have taken a series of actions that have fatally compromised the independence of the MSPB. Thus, Ms. Oyer is now facing the prospect of a multi-year wait before she first receives access to a truly independent adjudicator, which may be unavailable until she can have her claim heard in an Article III court. This added delay compounds the prejudice that Ms. Oyer is suffering.[5]

---

[5] In *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), the Supreme Court held that a federal employee challenging a covered personnel action was required to administratively exhaust his claim before the MSPB. While

Three recent developments have eroded the independence of the MSPB. *First*, President Trump has fired a Board member without cause, disregarding Congress's directive that Board members may be removed "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d); *see Harris v. Bessent*, 160 F.4th 1235, 1245 (D.C. Cir. 2025) (describing how President Trump removed Board Chair Cathy Harris without regard to the statutory removal restriction). As a result, the MSPB, which Congress envisioned as independent of the President, has been subordinated to the executive branch. *See Nat'l Ass'n of Immigr. Judges*, 139 F.4th at 306, 308 (describing how Congress sought to "protect the independence of the agencies reviewing federal employees' claims" but that independence has been "called into question").

*Second*, the President directed the MSPB to adhere to the legal positions of the Attorney General—*i.e.*, Ms. Oyer's adversary before the MSPB. By Executive Order, the President has decreed that the "President and the Attorney General . . . shall provide authoritative

---

Ms. Oyer is seeking to comply with the review scheme contemplated by the CSRA, she reserves the argument that MSPB exhaustion is no longer mandatory.

interpretations of law for the executive branch," and that these
interpretations are binding even on agencies that have historically been
regarded as independent. Exec. Order 14,215 of Feb. 18, 2025, *Ensuring
Accountability for All Agencies*, 90 Fed. Reg. 10,447 (Feb. 24, 2025).
DOJ's Office of Legal Counsel has not hesitated to exercise this
authority, issuing a legal opinion that purports to constrain how MSPB
is authorized to decide cases involving removals pursuant to Article II.
*The Merit Systems Protection Board's Authority to Adjudicate
Constitutional Questions with an Administrative Proceeding,* 49 Op.
O.L.C. 1 (Sept. 26, 2025), https://www.justice.gov/olc/media/1415466/dl.
One of the litigants before the MSPB claims authority to direct the
nominal adjudicator how to decide the case.

    *Third*, the current administration has taken the position that
MSPB administrative judges are removable at will by the President.
*See Improving Performance, Accountability and Responsiveness in the
Civil Service,* 91 Fed. Reg. 5580, 5635 (Feb. 6, 2026). This
administration has also made clear that it is willing to fire
administrative adjudicators who are perceived to be insufficiently loyal.
The two *Jaroch* cases arise from the terminations of immigration judges

without cause, and many dozens of other immigration judges have met a similar fate. *See, e.g.*, Emily Ngo, *Immigration courts thrown into chaos as Trump administration purges dozens of judges*, Politico (Dec. 6, 2025), https://www.politico.com/news/2025/12/06/trump-immigration-court-judge-purges-00679376. Given the inevitable *in terrorem* effect of these actions, it unrealistic to expect that an MSPB administrative judge can remain truly impartial. That is particularly true in a case like Ms. Oyer's, which is a politically salient and highly publicized case challenging the actions of a high-ranking DOJ official. *See, e.g.*, Devlin Barrett, *Justice Dept. Official Says She Was Fired After Opposing Restoring Mel Gibson's Gun Rights*, N.Y. Times (Mar. 10, 2025), https://www.nytimes.com/2025/03/10/us/politics/justice-department-mel-gibson.html; Kristin Wright, *Democrats hold "shadow hearing" on what they call Trump's attacks on the rule of law*, NPR (Apr. 8, 2025), https://www.npr.org/2025/04/08/nx-s1-5355076/democrats-hold-shadow-hearing-on-what-they-call-trumps-attacks-on-the-rule-of-law.

Given the collapse of MSPB independence, it is particularly offensive to due process for a claim to languish needlessly before the agency. If there can be any continuing expectation that wrongfully

terminated employees first seek redress before a compromised MSPB, that process must at least allow employees to administratively exhaust their claims in a timely manner. It is constitutionally intolerable for the MSPB process to become a morass that indefinitely delays access to the impartial adjudicators now only available in Article III courts.

4. Against that backdrop, the CAJ abused his discretion in dismissing Ms. Oyer's appeal without prejudice, substantially delaying her ability to obtain redress for her wrongful termination. To be sure, administrative judges are entrusted with significant discretion to determine when dismissals without prejudice are warranted. *See* 5 C.F.R. § 1201.29(b) (providing that the decision "whether to dismiss an appeal without prejudice is committed to the sound discretion of the judge"). But MSPB cannot, by regulation, exempt its actions from the statutory prohibition on agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 7703(c). And the regulation also provides meaningful standards to guide judicial review, including whether any opportunity for "administrative efficiency" from a dismissal outweighs the "prejudice" to the parties. 5 C.F.R. § 1201.29(b); *cf. Dept of Commerce v. New York*, 588 U.S. 752, 771-73 (2019).

On these facts, even affording the CAJ considerable deference, the decision to deny Ms. Oyer access to timely review of her termination was arbitrary and capricious and an abuse of discretion.

## B. This Court has jurisdiction to provide relief

There is also no jurisdictional impediment that would prevent Ms. Oyer from prevailing. True, this Court has in some unpublished orders "treated dismissals without prejudice subject to automatic reinstatement . . . as non-final decisions of the Board that are not immediately reviewable." *MacLean v. Merit Sys. Prot. Bd.*, No. 2023-1000, 2022 WL 17883619, at *1 (Fed. Cir. Dec. 23, 2022). But the Court has also issued non-precedential decisions that reviewed dismissals without prejudice on the merits. *See, e.g.*, *Brown v. Dep't of Treasury*, 140 F. App'x 269, 270 (Fed. Cir. 2005)*; Umshler v. Dep't of Interior*, 945 F.2d 417 (Fed. Cir. 1991); *Kontogeorge v. Off. of Pers. Mgmt.*, 907 F.2d 159 (Fed. Cir. 1990); *see also In re Jadhav*, 795 F. App'x 846, 848 n.* (Fed. Cir. 2020).

There is no precedential decision of this Court squarely addressing the appealability of MSPB orders dismissing administrative appeals without prejudice. But at least on the facts here, the proper rule is that

this Court has jurisdiction to review the CAJ's decision, which provided final resolution of MSPB Docket No. DC-0752-25-2372-I-1, and which adversely and irreversibly affects Ms. Oyer's rights.

1. This Court has jurisdiction to review any appeal from "a final order or final decision" of the MSPB. 28 U.S.C. § 1295(a)(9); *see also* 5 U.S.C. § 7703(a). This Court has a "virtually unflagging" obligation to resolve questions that fall within the scope of this grant of jurisdiction. *See Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024) (quotation marks omitted). MSPB regulations specify that an "initial decision of the [administrative] judge" will become the Board's final decision 35 days after issuance" (absent exceptions not applicable here). 5 C.F.R. § 1201.113. This Court has held that it will "look to the Board's regulation at 5 C.F.R. § 1201.113 to determine what constitutes a 'final order' for jurisdictional purposes." *Weed v. Soc. Sec. Admin.*, 571 F.3d 1359, 1362 (Fed. Cir. 2009) (quotation marks omitted).

Here, the Dismissal Order was an "initial decision." The order is captioned "INITIAL DECISION." Add. 1. It contains a Notice to Appellant specifying that, absent a request for Board review, "[t]his initial decision will become final on December 25, 2025" (*i.e.*, 35 days

after the initial decision was issued). Add. 3. And it goes on to explain that this "date on which the initial decision becomes final" is significant because it "controls when you can file a petition for review" as a means of obtaining judicial review. Add. 4, *see also* Add. 7-8. Thus, pursuant to MSPB's generally applicable regulations, the Dismissal Order became a final, reviewable decision of the Board 35 days after it was issued.

Just a few years ago, MSPB itself took the position that a dismissal without prejudice is judicially reviewable in this Court under analogous circumstances. *See* Br. of MSPB 16-19, *Jadhav v. MSPB*, No. 20-109 (Fed. Cir. Jan. 10, 2020). In *Jadhav*, MSPB argued that a petition for review, and not mandamus, is the proper means of challenging a dismissal without prejudice because initial decisions granting dismissals without prejudice "are subject to the same rules and restrictions as all other MSPB initial decisions" and "the MSPB's regulations do not provide any substantive distinctions between types of initial decisions." *Id.* at 19. Dismissals without prejudice are reviewed by the Board itself in the same manner as other types of initial decisions. *Id.* And once final, they definitively conclude the proceeding

in which they were issued because if the case is refiled, "the MSPB dockets a new case with a new case number." *Id.* at 20.[6]

Here, because the requisite 35 days elapsed without Board action, the CAJ's order is now a final decision of the Board and this Court has jurisdiction to review and reverse it as arbitrary and capricious and an abuse of discretion.

2. When this Court has stated that it lacks jurisdiction to review orders that dismissed MSPB appeals without prejudice, it has generally cited *Strausbaugh v. MSPB*, 401 F. App'x 524 (Fed. Cir. 2010), which is not only nonprecedential, but readily distinguishable. In *Strausbaugh*, the employee petitioner successfully moved the administrative judge for a dismissal without prejudice because he was about to be militarily deployed. *Id.* at 525. Although the employee had affirmatively sought the dismissal, he nonetheless appealed because the dismissal order did not grant the employee's separate request that the administrative judge

---

[6] MSPB has reversed course and argued that dismissals without prejudice are not final, reviewable orders. *E.g.*, Resp. to Order to Show Cause 5, *Martinez v. MSPB*, No. 25-1387 (Aug. 21, 2025 Fed. Cir.). But in so doing, it has identified no error in its persuasive analysis from *Jadhav*.

recuse himself. *Id.* This Court held it lacked jurisdiction to review the recusal issue because the challenged decision was not final.

Ms. Oyer, by contrast, opposed the delay in adjudication of her claims. And while the employee in *Strausbaugh* had the "option of refiling his claims" at any time, 401 F. App'x at 526, Ms. Oyer has been barred from refiling her case for half-a-year. Ms. Oyer is also challenging the Dismissal Order itself, not an ancillary recusal question that might be rendered moot by further administrative proceedings. She has appealed not because she is not concerned with some future proceeding, but rather, in response to the ongoing, irreparable injury of being denied the opportunity to obtain timely post-deprivation review of her unlawful termination.

3. Constitutional avoidance principles underscore that the Dismissal Order is appealable. As noted, Ms. Oyer was improperly denied any form of pre-deprivation review and is now being denied access to post-deprivation review as well. The agency's sole merits defense of her termination is its frivolous and self-defeating Article II theory. And in addition to this obvious violation of her due process rights, Ms. Oyer has also alleged that she is a victim of political

affiliation discrimination, a claim that has First Amendment underpinnings. *See Branti v. Finkel*, 445 U.S. 507 (1980). With all that is at stake, she cannot constitutionally be relegated to a protracted limbo without access to any forum in which she can obtain redress.

## III.   The Equitable Factors Also Favor Relief

For much the same reasons, the equitable factors decisively favor relief. Ms. Oyer is experiencing irreparable harm from the ongoing denial of her right to due process and from the denial of access to a forum in which to contest the violation of her First Amendment right to be free from political affiliation discrimination. *See, e.g.*, *Mills v. D.C.*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("It has long been established that the loss of constitutional freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (internal quotation marks omitted); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (citation omitted).

Respondents, by contrast, have no cognizable countervailing interests. DOJ has no legitimate interest in avoiding review of Ms.

Oyer's unlawful termination. And, as explained, MSPB will realize no efficiency gains from delay. Accordingly, a stay is warranted.

## CONCLUSION

For the forgoing reasons, the Dismissal Order should be stayed pending this Court's review.

Dated: Feb. 23, 2026

Respectfully submitted,

*/s/ Joshua M. Salzman*

Joshua M. Salzman
Webb Lyons
Elena Goldstein
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jsalzman@democracyforward.org

# CERTIFICATE OF COMPLIANCE

This motion complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,190 words. This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: Feb. 23, 2026

/s/ *Joshua M. Salzman*
JOSHUA M. SALZMAN

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, undersigned counsel certifies:

1. The sole party in this case represented by undersigned counsel is Elizabeth Oyer.

2. There is no other real party in interest.

3.  There is no applicable parent corporation.

4. In addition to Democracy Forward Foundation, Ms. Oyer was represented before the MSPB by James Eisenmann and Alex Dornacker of the Alden Law Group.

5. There is no related case within the meaning of Federal Circuit Rule 47.5.

6. No disclosure under Federal Rule of Appellate Procedure 26.1(b) or (c) is applicable.

/s/ *Joshua M. Salzman*
JOSHUA M. SALZMAN

# ADDENDUM

# ADDENDUM TABLE OF CONTENTS

Initial Decision,
  Tab 31 ......................................................................... Add. 1

Adverse Action Appeal,
  Tab 1 (excerpted) ........................................................ Add. 14

Agency File and Narrative Response,
  Tab 17 (excerpted) ...................................................... Add. 19

Agency Closing Brief,
  Tab 20 (excerpted) ...................................................... Add. 22

Appellant's Reply To Agency's Jurisdictional Brief,
  Tab 24 (excerpted) ...................................................... Add. 25

Order to Show Cause,
  Tab 27 ....................................................................... Add. 28

Appellant's Response to Order to Show Cause,
  Tab 30 (excerpted) ...................................................... Add. 30

Appellant's Motion for Reconsideration of the Initial Decision,
  filed as Tab 32 and subsequently withdrawn ............................. Add. 50

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

ELIZABETH OYER,
              Appellant,

    v.

DEPARTMENT OF JUSTICE,
              Agency,

    and

DIRECTOR OF THE OFFICE OF
  PERSONNEL MANAGEMENT,
              Intervenor.

DOCKET NUMBER
DC-0752-25-2372-I-1

DATE: November 20, 2025

James Eisenmann, Esquire, Alex Dornacker, Esquire, Michael Ceja Martinez, Esquire, Elena Goldstein, Esquire, and Cynthia Liao, Esquire, Washington, D.C., for the appellant.

Eric S. Daniels, Esquire, Joanna Mary Goodwin, Esquire, and Melanie F Jones, Esquire, Washington, D.C., for the agency.

**BEFORE**
Joel T. Alexander
Chief Administrative Judge

**INITIAL DECISION**

On April 3, 2025, the appellant filed this appeal of the agency's decision to remove them from their position and Federal service. Initial Appeal File (IAF), Tab 1. For the reasons discussed below, the appeal is DISMISSED WITHOUT PREJUDICE, subject to automatic refiling by the Board.

In this appeal, the appellant contends that, as an "employee" as defined by chapter 75 of Title 5 with a right to appeal a removal to the Board, the agency

was required to provide the appellant with notice and an opportunity to respond before effecting the action but did not do so. Thus, the appellant argues that the removal action must be reversed. The agency contends the appellant was not entitled to notice or an opportunity to respond with regard to the removal, because the agency head is authorized by Article II of the Constitution to remove such individuals without restriction.

On August 22, 2025, the Board's Washington Regional Office issued initial decisions in two separate appeals, *Megan Jackler v. Department of Justice*, MSPB Docket No. DA-0752-25-0330-I-1, and *Brandon Jaroch v. Department of Justice*, MSPB Docket No. DA-0752-25-0328-I-1. Those decisions concluded that the Board had jurisdiction over the appeals, the appellants were entitled to (and did not receive) due process, and the Board lacks authority to decide the agency's challenge to the constitutionality of the removal protections afforded by chapter 75 of Title 5. On September 26, 2025, the agency filed petitions for review of those initial decisions, again arguing, in part, that the agency head is authorized by Article II of the Constitution to appoint and remove such individuals without restriction.

On September 30, 2025, I notified the parties of my intent to dismiss this appeal without prejudice, subject to automatic refiling by the Board, because it appeared that a dispositive issue in this appeal is pending before the Board in *Jackler* and *Jaroch*. *See* IAF, Tab 27. The agency agreed that dismissing this appeal is appropriate pending resolution of *Jackler* and *Jaroch*. *See* IAF, Tab 29. The appellant objected to dismissal, arguing that legal, equitable, and factual matters in *Jackler* and *Jaroch* differ fundamentally from those present here. *See* IAF, Tab 30.

Administrative judges have broad discretion to control the proceedings before them, and dismissal without prejudice is a procedural option that is committed to their sound discretion. *See Gingery v. Department of the Treasury*, 111 M.S.P.R. 134, ¶ 9 (2009); 5 C.F.R. § 1201.29(b). A dismissal without

prejudice is appropriate when the interests of fairness, due process, and administrative efficiency outweigh any prejudice to either party. *Gingery*, 111 M.S.P.R. 134, ¶ 9; 5 C.F.R. § 1201.29(b).

Whether an agency head is authorized by Article II of the Constitution to remove an individual meeting the definition of an "employee" as defined by chapter 75 of Title 5, either under 5 U.S.C. § 7511(a)(1) or 5 U.S.C. § 7541(1), without restriction is an important question of law that, when answered, will materially advance the completion of this proceeding. Consequently, despite the differences between *Jackler* and *Jaroch* and this appeal, I conclude that a dismissal without prejudice is in the interests of administrative efficiency, and those interests outweigh any prejudice to either party.

Accordingly, this appeal is dismissed without prejudice for six months, and the Board will automatically refile it on or around **May 20, 2026**. Any documents already submitted in this appeal are already part of the record and should not be resubmitted when the appeal is refiled.

## DECISION

The appeal is DISMISSED WITHOUT PREJUDICE. The Board will automatically refile the appeal on or around **May 20, 2026**.

*Joel T. Alexander*

FOR THE BOARD:  _____
                            Joel T. Alexander
                            Chief Administrative Judge

## NOTICE TO APPELLANT

This initial decision will become final on **December 25, 2025**, unless a petition for review is filed by that date. This is an important date because it is usually the last day on which you can file a petition for review with the Board. Any petition for review must be filed within 35 days after the date of issuance of

the initial decision or, if the petitioner shows that the initial decision was received more than 5 days after the date of issuance, within 30 days after the date the petitioner received the initial decision. The date that the petitioner receives the initial decision is determined according to the standard set forth at § 1201.22(b)(3), pertaining to an appellant's receipt of an agency decision. If the petitioner is represented, the 30-day time begins to run upon receipt of the initial decision by either the representative or the petitioner, whichever comes first. The date on which the initial decision becomes final also controls when you can file a petition for review with one of the authorities discussed in the "Notice of Appeal Rights" section, below. The paragraphs that follow tell you how and when to file with the Board or one of those authorities. These instructions are important because if you wish to file a petition, you must file it within the proper time period.

## BOARD REVIEW

You may request Board review of this initial decision by filing a petition for review.

Your petition must state your objections to the initial decision, including all of your legal and factual arguments, and must be supported by references to applicable laws or regulations and by specific references to the record. You must file it with:

The Clerk of the Board
Merit Systems Protection Board
1615 M Street, NW.
Washington, DC 20419

A petition for review may be filed by mail, facsimile (fax), personal or commercial delivery, or electronic filing. A petition submitted by electronic filing must comply with the requirements of 5 C.F.R. § 1201.14, and may only be accomplished at the Board's e-Appeal website (https://e-appeal.mspb.gov/).

## Criteria for Granting a Petition for Review

Pursuant to 5 C.F.R. § 1201.115, the Board normally will consider only issues raised in a timely filed petition for review. Situations in which the Board may grant a petition for review include, but are not limited to, a showing that:

(a) The initial decision contains erroneous findings of material fact. (1) Any alleged factual error must be material, meaning of sufficient weight to warrant an outcome different from that of the initial decision. (2) A petitioner who alleges that the judge made erroneous findings of material fact must explain why the challenged factual determination is incorrect and identify specific evidence in the record that demonstrates the error. In reviewing a claim of an erroneous finding of fact, the Board will give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing.

(b) The initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case. The petitioner must explain how the error affected the outcome of the case.

(c) The judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case.

(d) New and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. To constitute new evidence, the information contained in the documents, not just the documents themselves, must have been unavailable despite due diligence when the record closed.

As stated in 5 C.F.R. § 1201.114(h), petition for review, or a response to a petition for review, whether computer generated, typed, or handwritten, is limited to 30 pages or 7500 words. A reply to a response to a petition for review is limited to 15 pages or 3750 words. A party relying on word count to adhere to the length limitation must include certification of the word count with their pleading. Argument formatted such that the length of the pleading cannot be determined

may be rejected. Computer generated and typed pleadings must use no less than 12-point typeface and 1-inch margins and must be double spaced and only use one side of a page. The length limitation is exclusive of any table of contents, table of authorities, attachments, and certificate of service. Length limitations may not be circumvented by including argument in attachments. Failure to comply with length limitations, after sufficient opportunity to comply, may lead to dismissal of the petition for review. A request for leave to file a pleading that exceeds the limitations must be received by the Clerk of the Board at least 3 days before the filing deadline. Such requests must give the reasons for a waiver as well as the desired length of the pleading and are granted only in exceptional circumstances. The page and word limits set forth above are maximum limits. Parties are not expected or required to submit pleadings of the maximum length.

If you file a petition for review, you should not include documents that were part of the record below, as the entire administrative record will be available to the Board. Any petition for review must be filed within 35 days after the date of issuance of the initial decision or, if the petitioner shows that the initial decision was received more than 5 days after the date of issuance, within 30 days after the date the petitioner received the initial decision. The date that the petitioner receives the initial decision is determined according to the standard set forth at § 1201.22(b)(3), pertaining to an appellant's receipt of an agency decision. If the petitioner is represented, the 30-day time period begins to run upon receipt of the initial decision by either the representative or the petitioner, whichever comes first.

Any response to a petition for review must be filed within 25 days after the date of service of the petition. Any reply to a response to a petition for review must be filed within 10 days after the date of service of the response to the petition for review. The Board's regulation at 5 C.F.R. § 1201.23 governs the computation of time.

## NOTICE TO AGENCY/INTERVENOR

Any party to the proceeding, the Director of the Office of Personnel Management (OPM), or the Special Counsel (under 5 U.S.C. 1212(c)) may file a petition for review. Each party is limited to filing a single petition for review, response to a petition for review, and reply to a response to a petition for review. A petition for review filed by an agency should address the agency's compliance with any interim relief requirements and should contain a certification, as set forth at 5 C.F.R. § 1201.116(a).

## NOTICE OF APPEAL RIGHTS

You may obtain review of this initial decision only after it becomes final, as explained in the "Notice to Appellant" section above. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this decision when it becomes final, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general.** As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date this decision becomes final</u>.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)  <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582

U.S. 420 (2017). If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after this decision becomes final as explained above. 5 U.S.C. § 7702(b)(1).

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date this decision becomes final</u> under the rules set out in the Notice to Appellant section, above.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx

CERTIFICATE OF SERVICE

I certify that the attached Document(s) was (were) sent as indicated this day to each of the following:

<u>Appellant</u>

Electronic Service        Elizabeth Oyer
                          Served on email address registered with MSPB

<u>Appellant Representative</u>

Electronic Service        Alex Dornacker
                          Served on email address registered with MSPB

<u>Appellant Representative</u>

Electronic Service        James Eisenmann
                          Served on email address registered with MSPB

<u>Appellant Representative</u>

Electronic Service        Elena Goldstein
                          Served on email address registered with MSPB

<u>Appellant Representative</u>

Electronic Service        Cynthia Liao
                          Served on email address registered with MSPB

<u>Appellant Representative</u>

Electronic Service Michael Martinez
Served on email address registered with MSPB

<u>Agency Representative</u>

Electronic Service Eric Daniels
Served on email address registered with MSPB

<u>Agency Representative</u>

Electronic Service Joanna Goodwin
Served on email address registered with MSPB

<u>Agency Representative</u>

Electronic Service Melanie Jones
Served on email address registered with MSPB

<u>Statutory Intervenor</u>

Electronic Service Patrick Ehler
Served on email address registered with MSPB

<u>Statutory Intervenor</u>

Electronic Service Jordan Perkins
Served on email address registered with MSPB

_Joel T. Alexander_
_____          _____
11/20/2025                              Joel T. Alexander
(Date)                                  Chief Administrative Judge

## U.S. MERIT SYSTEMS PROTECTION BOARD
## WASHINGTON REGIONAL OFFICE

| | | |
|---|---|---|
| **ELIZABETH G. OYER,** | ) | |
| | ) | |
| **Appellant,** | ) | **April 3, 2025** |
| | ) | |
| **v.** | ) | **Docket No. _____** |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | **AJ: TBD** |
| | ) | |
| **Agency.** | ) | |
| | ) | |

## ADVERSE ACTION APPEAL

### Introduction

This appeal involves a clear violation of law by the U.S. Department of Justice when on March 7, 2025, the Department summarily fired Elizabeth G. Oyer - a dedicated public servant - without providing her the pre-termination process and whistleblower protections to which she was entitled. In doing so, the Department of Justice violated the U.S. Constitution and federal law.

The Department of Justice's March 7, 2025, memorandum immediately terminating Ms. Oyer's federal employment states that the Department fired Ms. Oyer "[p]ursuant to Article II of the Constitution and laws of the United States …." *See* attached Notice Removal from the Senior Executive Service. The Department of Justice termination memorandum makes no allegation of any alleged misconduct on the part of Ms. Oyer. The Department of Justice's denial of Ms. Oyer's constitutional and other legal rights cannot stand.

The relevant details of the instant appeal follow.

### Background

1. The Appellant is Elizabeth G. Oyer.

2. The Agency is the Department of Justice ("the Agency" or "the Department").

Add.014

3. Ms. Oyer began her career with the federal government in September 2012.[1] Between September 2012 and March 2022, Ms. Oyer served as an Assistant Federal Public Defender and then Senior Litigation Counsel in the Office of the Federal Public Defender for the District of Maryland. From April 2022, through the date of her termination, Ms. Oyer served as Pardon Attorney, a career-reserved SES position overseeing the Office of the Pardon Attorney, Department of Justice. Ms. Oyer's performance during the entirety of her federal service was rated as Outstanding. Prior to her termination, Ms. Oyer successfully completed a one-year SES probationary period.

Adverse action

4. The adverse action appealed is a summary removal, effective March 7, 2025. On March 7, 2025, Christopher Hartle, Assistant Director, Security and Emergency Planning Staff hand-delivered a termination notice to Ms. Oyer which stated in pertinent part:

> This memorandum serves as official notice that you are removed from your Senior Executive Service (SES) position of Pardon Attorney, Office of the Pardon Attorney, and from federal service, effective immediately. Pursuant to Article II of the Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated.

*See* Notice. This termination notice was signed by the Deputy Attorney General, Todd Blanche. Prior to Ms. Oyer's termination, the Agency did not provide Ms. Oyer any notice of a proposed termination or an opportunity to respond to such a notice.

5. At the time the Agency summarily removed Ms. Oyer, she was an "employee" pursuant to 5 U.S.C. § 7541, *et seq*. As such, she could be terminated from her SES position and federal employment "… *only* for misconduct, neglect of duty, malfeasance, or failure to accept a

---

[1] Ms. Oyer also has previous federal employment as a judicial law clerk from September 2004 to October 2005.

directed reassignment or to accompany a position in a transfer of function." *See* 5 U.S.C. § 7543(a) (emphasis supplied). The Agency has cited none of those conditions in terminating Ms. Oyer's federal employment. Further, the Agency removed Ms. Oyer from her federal employment without affording her the Due Process rights to which she was entitled under 5 U.S.C. § 7543.

6. The removal action is improper because:

   a. Ms. Oyer was an employee under 5 U.S.C. § 7541, *et seq.* at the time of her removal. Because the Agency failed to provide Ms. Oyer pre- and post- removal rights, the removal violated the U.S. Constitution and 5 U.S.C. Chapter 75.

   b. The Agency did not terminate Ms. Oyer for any of the reasons required in 5 U.S.C. § 7543(a) and did not comply with the process required by 5 U.S.C. § 7543(b), and is otherwise inconsistent with law, rule, or regulation.

<u>Affirmative defenses</u>

7. <u>Fifth Amendment to U.S. Constitution</u>: Pursuant to 5 U.S.C. § 7541 and § 7543, Ms. Oyer had a property interest in continued employment with the Agency. As such, pursuant to 5 U.S.C. § 7543 and the Fifth Amendment, the Agency was required to provide Ms. Oyer notice of the proposed removal, an opportunity to respond to the proposed removal notice, a written decision and an opportunity to appeal a removal decision to the U.S. Merit Systems Protection Board. The Agency's summary removal of Ms. Oyer without pre-termination process violated the Due Process clause of the Fifth Amendment to the U.S. Constitution.

8. <u>Whistleblower Protection Act</u>: The Agency's summary removal of Ms. Oyer violated the Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8), § 2302 (b)(9)(D), and § 2302(b)(10).

Add.016

a. <u>5 U.S.C. § 2302(b)(8)</u> – The Agency's termination of Ms. Oyer was in retaliation for protected disclosures Ms. Oyer made that she reasonably believed evidenced (i) a violation of any law, rule, or regulation and/or (ii) a substantial and specific danger to public health or safety.

b. <u>5 U.S.C. § 2302(b)(9)(D)</u> – The Agency's termination of Ms. Oyer was in retaliation for Ms. Oyer's refusal to obey an order that would require her to violate a law, rule, or regulation.

c. <u>5 U.S.C. § 2302(b)(10)</u> - The Agency's termination of Ms. Oyer violated § 2302(b)(10) because it discriminated against her on the basis of conduct which did not adversely affect her performance.

9. <u>Prohibited Personnel Practices</u>: The Agency's summary removal of Ms. Oyer violated 5 U.S.C. § 2302(b)(1)(E) because it was based on the Department's perception that Ms. Oyer was not politically affiliated with the current Administration.

<u>Remedies requested</u>

10. Ms. Oyer requests the following remedies:

a. Rescission of the removal;

b. Retroactive reinstatement with back pay, interest, and benefits;

c. Reimbursement of full and reasonable attorney fees and costs;

d. Compensatory and consequential damages;

e. All other relief that will provide Ms. Oyer with make-whole relief; and

f. Any other relief deemed appropriate.

11. The name, address, and telephone number of Ms. Oyer's counsel are noted below.

Add. 017

12. Neither Ms. Oyer nor anyone acting on her behalf has filed a grievance or a formal discrimination complaint with any agency regarding this matter.

13. **AN IN-PERSON HEARING IS HEREBY REQUESTED.**

14. This appeal is timely filed pursuant to 5 C.F.R. § 1201.22(b)(1).

April 3, 2025                                        Respectfully submitted,

_____

James M. Eisenmann

_____

Alex Dornacker

ALDEN LAW GROUP, PLLC
1850 M Street, NW
Suite 901
Washington, DC 20036
(202) 463-0300 (phone)
(202) 463-0301 (fax)

*Attorneys for Appellant*

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

| | | |
|---|---|---|
| ELIZABETH OYER, | ) | Docket No. DC-0752-25-2372-I-1 |
| Appellant, | ) | |
| | ) | |
| v. | ) | Chief Administrative Judge |
| | ) | Joel Alexander |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| Agency. | ) | June 16, 2025 |

## AGENCY FILE AND NARRATIVE RESPONSE

Pursuant to the May 22, 2025, Acknowledgement Order in the above-captioned case, the Department of Justice (Agency or Department ) submits the following information and materials.

1. **NARRATIVE RESPONSE TO THE APPEAL**

The Department states as follows:

The Appellant in this matter is Ellizabeth Oyer, former Pardon Attorney, Office of the Pardon Attorney. *See Tab 4c (Notification of Personnel Action, SES Career Appointment (SF 50), dated April 10, 2022.*

On March 7, 2025, then Acting Deputy Attorney General, Todd Blanch, removed Appellant from Federal service and from her position as Pardon Attorney based on the President's core and inherent authority under Article II of the Constitution, and the laws of the United States. *See Tab 4b (Notice of Removal, dated March 7, 2025).* Appellant's removal was effective March 7, 2025. *See Tab 4a (Notification of Personnel Action (SF-50), dated March 7, 2025).*

Respectfully submitted,

/s/ Joanna Goodwin
/s/ Melanie Jones
_____

U.S. Department of Justice



**U.S. Department of Justice**

---

*Washington, D.C. 20530*

MEMORANDUM FOR ELIZABETH G. OYER

FROM:    THE DEPUTY ATTORNEY GENERAL

Subject:    Notice of Removal from the Senior Executive Service

This memorandum serves as official notice that you are removed from your Senior Executive Service (SES) position of Pardon Attorney, Office of the Pardon Attorney, and from federal service, effective immediately. Pursuant to Article II of the Constitution and the laws of the United States, your employment with the Department of Justice is hereby terminated.

If applicable, you may have a right to file an appeal of this removal with the U.S. Merit Systems Protection Board (MSPB) within 30 days of the effective date of the removal action. For more information on how to file an appeal with the MSPB, please visit www.mspb.gov.

_____     3-7-2025
Deputy Attorney General            Date

I acknowledge receipt of this notice of removal. I understand that my acknowledgment of receipt does not constitute agreement with the action, and I understand that my refusal to acknowledge receipt does not void or otherwise prevent the removal action.

_____
Elizabeth G. Oyer

Add.021

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## DALLAS REGIONAL OFFICE

| | | |
|---|---|---|
| ELIZABETH OYER, | ) | DOCKET NUMBER: |
| Appellant, | ) | DC-0752-25-2372-I-1 |
| v. | ) | |
| DEPARTMENT OF JUSTICE, | ) | Chief Judge Joel Alexander |
| Agency, | ) | |
| and | ) | |
| DIRECTOR OF THE OFFICE OF | ) | Date July 15, 2025 |
| PERSONNEL MANAGEMENT, | ) | |
| Intervenor. | ) | |

### AGENCY'S CLOSING BRIEF

Pursuant to the Merit Systems Protection Board's ("Board") Order and Summary of Status Conference ("Order"), the United States Department of Justice("Agency") respectfully submits this closing brief.

Appellant is the former Pardon Attorney. On March 7, 2025, the Deputy Attorney General, Todd Blanche, removed Appellant from office pursuant to Article II of the United States Constitution. Agency File (AF at Tab 4b). The removal decision was recorded in Notification of Personnel Action (Form SF-50) issued on March 7, 2025. AF at Tab 4a. On April 3, 2025, 2025, Appellant filed a MSPB Form 185 with the Merit Systems Protection Board ("Board"). Appellant alleges that the Agency failed to provide her with pre- and post-removal rights in violation of the U.S. Constitution and 5 U.S.C. Chapter 75, did not remove Appellant for any of the reasons required by 5 U.S.C. § 7543(a) and did not comply with the process required by 5 U.S.C. § 7543(b). Appellant pleads affirmative defenses of: a Fifth Amendment violation; Whistleblower Protection Act violations 5 U.S.C. §§ 2302(b)(8); 2302(b)(9)(D) and 2302(b)(10); and Prohibited Personnel Practices, 5 U.S.C. § 2302(b)(1)(E).

On April 18, 2025, the Office of Personnel Management exercised its right under 5 U.S.C.

§ 7701(d)(1) to intervene in this proceeding Docket at Tab 7

The following issues are in dispute:

A. Whether Appellant is an "employee" with Board appeal rights, as defined by 5 U.S.C. § 7511(a) (1); and

B. If so, whether Appellant's removal violated the U.S. Constitution and 5 U.S.C. Chapter 75 and if the Agency's removal complied with the basis and process required by 5 U.S.C. 7543.

For the reasons set forth below, the Agency contends that (A) Appellant was an employee whose removal is appealable to the Board; and (B) the Agency appropriately removed Appellant pursuant to Article II of the U.S. Constitution and no additional process was required. The Board should therefore uphold the Agency's removal decision.

## I. Appellant Was an "Employee" Whose Removal Is Appealable to the Board.

The Agency agrees with Appellant that she was appointed as Pardon Attorney, a career position in the Senior Executive Service (SES). Under the relevant statute, Appellant was appointed pursuant to 5 U.S.C. § 3393 and served as the Pardon Attorney. Appellant served in that role until Deputy Attorney General Todd Blanche removed her on March 7, 2025.

The Agency further agrees with Appellant that as a "career appointee" in the Senior Executive Service who has completed a probationary period in the Senior Executive Service, she may appeal certain adverse actions, including termination, to the Board. 5 U.S.C. §§ 7541, 7543. (permitting the Office of Personnel Management to apply provisions of subchapter, including the right to appeal adverse personnel decisions to the Board, "by regulation" to "any position or group of positions excepted from the competitive service"). Appellant rightly asserts that all of those qualifications are met— in that she is a member of the career SES and had completed her

probatory period.  *See* AF Tab 4c.  The Board has previously exercised jurisdiction over similar officials' appeals.  *See Shenwick v. Dep't of State*, 92 M.S.P.R. 280 (M.S.P.B. Sept. 4, 2002) (jurisdiction over SES removal); *Foster v. Dep't of Lab.*, 21 M.S.P.R. 197 (1984) (jurisdiction over SES removal).

## II.  The Agency Properly Removed Appellant Pursuant to Article II and No Additional Process was Required.

Deputy Attorney General Blanches termination of Appellant's employment was a lawful exercise of the Attorney General's authority under Article II of the Constitution.  Article II of the Constitution allows the President and heads of departments exercising his power to remove inferior officers without cause, subject to only narrow exceptions that do not apply to Appellant's former position.  No statute provides otherwise, and even if it did, the statute would run afoul of Article II.  Additionally, the Due Process Clause does not provide Appellant any additional procedural protections.  In this context, the Deputy Attorney General's decision to terminate Appellant was all the process she was due.

### A.  The Board Should Consider the Agency's Constitutional Arguments Here.

As a preliminary matter, the Agency respectfully submits that the particular constitutional question at issue in this case—Appellant's termination under Article II of the Constitution—is within the Board's jurisdiction.  As explained below, Article II of the Constitution requires that Appellant be removable at-will, and thus the Board may properly consider whether the Civil Service Reform Act  (CSRA), as applied in this particular case, does or can impede that requirement consistent with the Constitution.  In resolving that question, the Board is not determining the facial constitutionality of the statute, but rather deciding a discrete constitutional question relevant to a "specific substantive decision" to "fire an employee."  *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 189 (2023).  As explained herein, those types of constitutional questions fall

3
Add.024

|  |  |  |
|---|---|---|
| **ELIZABETH G. OYER,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| v. | ) | **Docket No. DC-0752-25-2372-I-1** |
| | ) | |
| **U.S. DEPARTMENT OF JUSTICE,** | ) | **CAJ: Joel T. Alexander** |
| | ) | |
| **Agency,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DIRECTOR, OFFICE OF PERSONNEL MANAGEMENT,** | ) | |
| | ) | |
| **Intervenor.** | ) | |

## APPELLANT'S REPLY TO AGENCY'S JURISDICTIONAL BRIEF

On May 22, 2025, the Chief Administrative Judge issued an order requiring the parties to brief three issues pertaining to the jurisdiction of the U.S. Merit Systems Protection Board ("MSPB" or "Board"). Tab 12. On July 15, 2025, Appellant Elizabeth G. Oyer and the Department of Justice ("Agency") filed responses to the order. Tabs 19, 20. Appellant submits the instant reply to the Agency's response.

## INTRODUCTION

The Agency advances an untenable, extreme view of the Executive Branch's Article II removal power that would eviscerate the Civil Service Reform Act's (CSRA's) core protections for career civil servants. Under the Agency's theory, agencies can, by simply invoking "Article II," ignore the CSRA and fire career civil servants for arbitrary reasons, retaliate against whistleblowers, discriminate against employees perceived to be Democrats or Republicans, and there would be nothing that Congress or the Merit Systems Protection Board (MSPB or Board) could do about it. This is nothing less than a wholesale assault on the merit system principles. In

prosecution is also a core executive power and the Supreme Court nevertheless upheld removal restrictions for an independent counsel with "full power and independent authority to exercise all investigative and prosecutorial functions and powers" of the Department of Justice. *Morrison*, 487 U.S. at 696-97. Similarly, command over the military is also arguably a core executive power, but the Court has upheld removal protections for a naval officer. *Perkins*, 116 U.S. at 484-85. If Article II did not bar removal protections for those officers, there is no reason to think that the pardon power is so special that no removal protections are permitted.

The Agency also argues that Appellant exercises a "'conclusive and preclusive' power on behalf of the President." Tab 20 at 14 (citing *Trump v. United States*, 603 U.S. 593, 608 (2024)). Again, though, not only does the Pardon Attorney not make final decisions on clemency (the President does), the Pardon Attorney does not even make final recommendations (the Deputy Attorney General or Attorney General does). Further, even if the President's ultimate decision to grant clemency is "conclusive and preclusive," that does not speak to whether Congress can regulate the removal of the Pardon Attorney. In *Trump* itself, cited by the Agency, the Supreme Court suggested "the President's 'exclusive power of removal in executive agencies' as an example of 'conclusive and preclusive' constitutional authority," but it continued to recognize that there were "exceptions to the President's unrestricted removal power." *Trump*, 603 U.S. at 609 (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 638 n.4 (1952) (Jackson, J., concurring), and *Seila Law*, 591 U.S. at 215). One of those is the *Morrison* exception, which, for the reasons above, applies to this case.

## VI. Under Article II, the Deputy Attorney General cannot remove the Pardon Attorney.

Finally, even if the Agency were correct (it is not) that Article II allows it to remove inferior officers regardless of the CSRA and that the Pardon Attorney is an inferior officer, Appellant's removal was still invalid. Under Article II, only the Attorney General has authority to remove inferior officers. But according to the file produced by the Agency, Appellant was removed by Deputy Attorney General Todd Blanche. Tab 17 at 10.

18
Add.026

Officers must be appointed in particular ways. Principal officers must be nominated by the President and confirmed by the Senate. This is also the default method for inferior officers, but alternatively, Congress "may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const., art. II, § 2, cl. 2; *Edmond*, 520 U.S. at 660. Removals must be carried out in particular ways as well. As a textual matter, the Constitution is silent as to removal of officers, but the power to remove is understood to be incidental to the power to appoint. *Myers*, 272 U.S. at 161. Just as the power to appoint cannot be delegated, the power to remove cannot either. *See Braidwood*, 145 S. Ct. at 2456 ("where the Constitution requires that the Secretary personally perform a particular function, like appointing the Task Force members, delegation is not an option"); *Free Enter. Fund*, 561 U.S. at 493 (if Congress vests the appointment of inferior officers in heads of departments, "it is ordinarily the department head, rather than the President, who enjoys the power of removal"); *Appointment & Removal of Fed. Rsrv. Bank Members of the Fed. Open Mkt. Comm.*, 43 Op. O.L.C. 263, 283 (Oct. 23, 2019) ("We have conceived of both the power to appoint and the power to remove such officers as being among the nondelegable authorities 'prescribed by the Constitution.'").

Here, Congress vested in the Attorney General the authority to appoint the Pardon Attorney. *See* 5 U.S.C. §§ 509, 510, 533(4). If the Pardon Attorney is an inferior officer, only the Attorney General has the authority to remove the Pardon Attorney. But the Agency's file shows that Deputy Attorney General Todd Blanche removed Appellant, not Attorney General Pamela Bondi. Thus, under the Agency's own Article II theory, Appellant's removal was unlawful.

## VII. Appellant has constitutional due process rights and statutory rights under 5 U.S.C. §§ 7543 and 7701, including protection from whistleblower retaliation and political affiliation discrimination.

Contrary to the Agency's argument, Appellant has a property right in her career SES status because the CSRA "sets a baseline expectation that a 'career appointee may not be removed from the Senior Executive Service or civil service except in accordance with' five specified provisions."

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

| | |
|---|---|
| ELIZABETH OYER,<br>    Appellant, | DOCKET NUMBER<br>DC-0752-25-2372-I-1 |
| v. | |
| DEPARTMENT OF JUSTICE,<br>    Agency, | DATE: September 30, 2025 |
| and | |
| DIRECTOR OF THE OFFICE OF<br>  PERSONNEL MANAGEMENT,<br>    Intervenor. | |

## ORDER TO SHOW CAUSE

This appeal involves a challenge to the agency's action removing the appellant from Federal service. The appellant contends that, as an "employee" as defined by chapter 75 of Title 5 with a right to appeal a removal to the Board, the agency was required to provide the appellant with notice and an opportunity to respond before effecting the action but did not do so. Thus, the appellant argues that the removal action must be reversed. The agency contends the appellant was not entitled to notice or an opportunity to respond with regard to the removal, because the agency head is authorized by Article II of the Constitution to appoint and remove such individuals without restriction.

On August 22, 2025, the Board's Washington Regional Office issued initial decisions in two separate appeals, *Megan Jackler v. Department of Justice*, MSPB Docket No. DA-0752-25-0330-I-1, and *Brandon Jaroch v. Department of Justice*, MSPB Docket No. DA-0752-25-0328-I-1. Those decisions concluded that the Board had jurisdiction over the appeals, the appellants were entitled to (and did

not receive) due process, and the Board lacks authority to decide the agency's challenge to the constitutionality of the removal protections afforded by chapter 75 of Title 5. On September 26, 2025, the agency filed petitions for review of those initial decisions. Thus, the dispositive issues in this appeal are pending before the Board in *Jackler* and *Jaroch*.

The Board's regulations provide that a dismissal without prejudice is a procedural option that allows for the dismissal and subsequent refiling of an appeal. 5 C.F.R. § 1201.29. The decision to grant a dismissal without prejudice is "committed to the sound discretion of the judge" and "may be granted on the judge's own motion or upon request by either party" based on a finding that any prejudice is outweighed by the interests of fairness, due process, and administrative efficiency. *Id.*

Here, it appears that good cause exists to dismiss this appeal without prejudice to refiling in the interests of administrative efficiency. 5 C.F.R. § 1201.29. As noted above, the record demonstrates that a potentially dispositive issue in this appeal is pending before the Board in those petitions for review, and the Board's decisions in the petitions may control the outcome of this appeal.

I **ORDER** the parties to show cause why this appeal should not be dismissed without prejudice pending the resolution of those petitions, subject to automatic refiling by the Board 6 months from date this appeal is dismissed. Any response from the parties must be **received** no later than **5 calendar days** from the date of this Order. Absent any response, I will dismiss this appeal without prejudice thereafter.


FOR THE BOARD:          *Joel T. Alexander*
                        _____
                        Joel T. Alexander
                        Chief Administrative Judge

## U.S. MERIT SYSTEMS PROTECTION BOARD
## DALLAS REGIONAL OFFICE

| | |
|---|---|
| ELIZABETH G. OYER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Docket No. DC-0752-25-2372-I-1 |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | CAJ: Joel T. Alexander |
| ) | |
| Agency, ) | Date: November 18, 2025 |
| ) | |
| and ) | |
| ) | |
| DIRECTOR, OFFICE OF PERSONNEL ) | |
| MANAGEMENT, ) | |
| ) | |
| Intervenor. ) | |

### APPELLANT'S RESPONSE TO SHOW CAUSE ORDER

Appellant Elizabeth Oyer respectfully submits this response to the Chief Administrative

Judge's September 30, 2025, Order to Show Cause, which directed the parties to address whether

this appeal should be dismissed without prejudice pending resolutions of petitions for review in

*Jackler v. Dep't of Justice*, MSPB Docket No. DA-0752-25-0330-I-1, and *Jaroch v. Dep't of

Justice*, MSPB Docket No. DA-0752-25-0328-I-1. Those petitions challenge the U.S.

Department of Justice's terminations of two immigration judges under the Attorney General's

purported Article II removal authority. The Order suggests that resolution of those two petitions

may "control the outcome" of this appeal and therefore dismissal without prejudice may be

appropriate.

The Board's dismissal authority under 5 C.F.R. § 1201.29 is designed to advance fairness,

due process, and administrative efficiency, not to invite unnecessary delay. Here, dismissal

### III. The Article II Arguments in the Immigration Judge Petitions Do Not Resolve the Distinct Issues Raised by a Removal Executed by the Deputy Attorney General

The immigration judge petitions for review relate to whether the Attorney General, as the head of DOJ, may invoke Article II authority to remove immigration judges, whom the Agency contends are inferior officers, at will. That question, even if answered in DOJ's favor, has little relevance for this case.

Appellant's removal was not carried out by the Attorney General. Instead, the *Deputy Attorney General* removed her, and the Agency has identified no statutory or constitutional basis for concluding that a subordinate official like the Deputy Attorney General may unilaterally invoke Article II to bypass the CSRA's protections. The removal notice issued to Appellant bears the signature of the Deputy Attorney General, not the Attorney General. *See* Tab 17 at 10. Yet DOJ has repeatedly asserted in other pending MSPB litigation that the power to remove "inferior officers of the Attorney General" rests solely with the Attorney General. *See* Ex. C (DOJ's Renewed Motion to Dismiss in *[Redacted 1] v. Dep't of Justice*, Docket No. DC-0351-25-1682-I-1 (Tab 35) and *[Redacted 2] v. Dep't of Justice*, Docket No. DC-0351-25-1679-I-1 (Tab 32). There, DOJ argued:

> It is an uncontested fact that an inferior officer at the Department of Justice, such as Appellant was, may *only* be removed by the Attorney General pursuant to her authority under Article II of the Constitution. Indeed, no other individual at the Department of Justice possesses that authority; including EOIR's Director.

*Id.* (*[Redacted 1]*, at p. 5, *[Redacted 2]*, at p. 5) (emphasis in originals).

Having staked that position, the Agency cannot simultaneously maintain that the Deputy Attorney General also possessed independent constitutional authority to affect such removals.

Nor has the Agency identified any statute, regulation, or delegation order that purportedly transfers to the Deputy Attorney General the Article II removal power that, by DOJ's own

7
Add.031

account, resides exclusively with the Attorney General. Officers must be appointed in particular ways. Principal officers must be nominated by the President and confirmed by the Senate. U.S. Const. art II, § 2, cl. 2. This is also the default method for inferior officers, but alternatively, Congress "may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id*. ; *Edmond v. United States*, 520 U.S. 651, 660 (1997). Removals must be carried out in particular ways as well. As a textual matter, the Constitution is silent as to removal of officers, but the power to remove is understood to be incidental to the power to appoint. *Myers v. United States*, 272 U.S. 52, 161 (1926). Just as the power to appoint cannot be delegated, the power to remove cannot either. *See Kennedy v. Braidwood Mgmt.*, 145 S. Ct. 2427, 2456 (2025) ("where the Constitution requires that the Secretary personally perform a particular function, like appointing the Task Force members, delegation is not an option"); *Free Enter. Fund*, 561 U.S. at 493 (2010) (if Congress vests the appointment of inferior officers in heads of departments, "it is ordinarily the department head, rather than the President, who enjoys the power of removal"); *Appointment & Removal of Fed. Rsrv. Bank Members of the Fed. Open Mkt. Comm.*, 43 Op. O.L.C. 263, 283 (Oct. 23, 2019) ("We have conceived of both the power to appoint and the power to remove such officers as being among the nondelegable authorities 'prescribed by the Constitution.'").

Here, Congress vested in the Attorney General the authority to appoint the Pardon Attorney. *See* 5 U.S.C. §§ 509, 510, 533(4). If the court concludes that the Pardon Attorney is an inferior officer, only the Attorney General, not the Deputy Attorney General, has the authority to remove the Pardon Attorney. Thus, under the Agency's own Article II theory, Appellant's removal raises legal and factual questions that are not presented in *Jackler* or *Jaroch*, and cannot be resolved by a decision in those matters.

8
Add.032

# EXHIBIT C

|  |  |  |
|---|---|---|
| ████████████ | ) | Docket Number: DC-0351-25-1682-I-1 |
| Appellant, | ) | |
| v. | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | Date: September 30, 2025 |
| Agency, | ) | |
| and | ) | |
| DIRECTOR OF THE OFFICE OF | ) | |
| PERSONNEL MANAGEMENT, | ) | |
| Intervenor. | ) | |

## AGENCY'S RENEWED MOTION TO DISMISS APPEAL, MOTION TO STAY DISCOVERY, AND MOTION TO CERTIFY INTERLOCUTORY APPEAL AND STAY PROCEEDINGS

The United States Department of Justice ("DOJ"), with its component the Executive Office for Immigration Review ("EOIR" or the "Agency"), respectfully submits this renewed motion to dismiss with the Administrative Judge of the Merit Systems Protection Board ("MSPB"). The Agency further maintains that discovery be stayed pending the adjudication of the claims presented herein. If the Administrative Judge denies the Agency's motion to dismiss, the Agency further requests that the Administrative Judge certify that decision for an interlocutory appeal and stay proceedings pending the disposition of that review. In order to avoid unnecessary repetition, the Agency herein incorporates the positions articulated in its original "Agency's Motion To Dismiss, Motion To Stay Discovery, Motion To Postpone Or Cancel Status Conference, And Conditional Motion To Certify Interlocutory Appeal And Stay Proceedings" and "Motion To Reconsider Denial Of Agency's Motion To Dismiss; Motion To Certify Interlocutory Appeal And Stay Proceedings" (Initial Appeal File ("IAF"), Tabs 19, 25).

As has been discussed at length, Appellant was previously appointed to be an Appellate Immigration Judge of the Board of Immigration Appeals ("BIA") by the former Attorney General. As such, she was duly removed from her position by the Attorney General, a prerogative of the

Add.034

Attorney General's authority under Article II of the United States Constitution. It is an uncontested fact that an inferior officer at the Department of Justice, such as Appellant was, may *only* be removed by the Attorney General pursuant to her authority under Article II of the Constitution. Indeed, no other individual at the Department of Justice possesses that authority; including EOIR's Director. To be sure, that removal authority may be exercised through multiple, different *procedures*—*e.g.* at will, a Reduction in Force ("RIF") action, notice under 5 U.S.C. § 7513, or, in cases involving an administrative law judge, a hearing under 5 U.S.C. § 7521—at the Attorney General's discretion. Indeed, there is no requirement in the Constitution or case law that the President through a principal officer has to use any particular method to remove an inferior officer. But, the use of any particular method or procedure for effectuating a removal does not—and cannot—change the underlying fact that the removal authority being exercised is the Attorney General's constitutional authority to remove an inferior officer. While the Agency fully rejects Appellant's perceived defects in the RIF procedures employed by the Agency, the Attorney General's Article II imprimatur is, in itself, sufficient to uphold the removal action. Thus, Appellant's yet-to-be demonstrated alleged defects in following regulatory RIF procedures cannot support a vacatur of the Attorney General's decision to remove her from office.

The Agency recognizes that the presiding Administrative Judge is reluctant to consider arguments premised upon the United States Constitution—and, throughout this case, has persistently mischaracterized the Agency's position in order to avoid doing so. However, on September 26, 2025, the DOJ's Office of Legal Counsel issued its Memorandum Opinion for the Counsel to the President, T. Elliot Gaiser, Assistant Attorney General, Office of Legal Counsel, Re: The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding, 49 Op. O.L.C. __ (Sept. 26, 2025) ("OLC Opinion")

(attached). The OLC, exercising authority delegated by the Attorney General, provides binding legal advice within the Executive Branch. *See* 28 U.S.C. § 511; 28 C.F.R. § 0.25(a); Memorandum Opinion for the Acting Assistant Attorney General Criminal Division, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, Re: Reconsidering Whether The Wire Act Applies To Non-Sports Gambling, 42 Op. O.L.C. 158, 176, 2018 WL 7080165, at *12 (Nov. 2, 2018); *accord Casa de Maryland v. U.S. Dept. of Homeland Security*, 924 F.3d 684, 692 n.1 (4th Cir. 2019) ("Although not binding on [Article III] courts, OLC opinions reflect the legal position of the executive branch and are generally viewed as providing *binding* interpretive guidance for executive agencies." (cleaned up) (emphasis added)); *cf. Smith v. Jackson*, 246 U.S. 388, 389-91 (1918) (holding "that any doubt which [an Executive Branch official] might have had [about following a law] should have been subordinated. . . to the ruling of the Attorney General").

The OLC has reached the conclusion that the Administrative Judges of the Board "must adjudicate the constitutional issues raised by the Agencies." OLC Opinion at 12. Further, the OLC Opinion should be considered binding upon the MSPB. *See Cherichel v. Holder*, 591 F.3d 1002, 1016 n. 17 (8th Cir.2010) (noting that "OLC opinions are generally binding on the Executive branch"); *see also United States v. Arizona*, 641 F.3d 339, 385 n. 16 (9th Cir.2011) ("Office of Legal Counsel opinions are generally viewed as providing binding interpretive guidance for executive agencies and reflecting the legal position of the executive branch." (internal quotation marks, citations, and alterations omitted)), *aff'd in part, rev'd in part and remanded on other grounds*, 567 U.S. 387 (2012); *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 440 (1995) (recognizing that the OLC Memorandum is binding on the Department of Justice and other Executive Branch agencies).

The OLC Opinion, which constitutes the official stance of the Executive Branch, speaks

Add.036

for itself: "[T]he MSPB administrative judges must adjudicate the constitutional issues raised by the Agencies." OLC Opinion at 12. The OLC, considering MSPB precedential decisions, arrived at the conclusion that, even if "agency adjudications are generally ill suited to address structural challenges to their own enabling acts," "an agency's intimate familiarity with the statutes and regulations it administers may make it particularly well suited to address most other constitutional questions—even where such challenges could be made by a large group of individual plaintiffs." OLC Opinion at 9 (cleaned up).

The Administrative Judge's prior indication that Appellant was not removed pursuant to the use of the Attorney General's authority (IAF, Tab 29) was wrong as both a factual[1] matter and a legal[2] matter. Nevertheless, it is not seriously disputed that (1) Appellant occupied an inferior officer position, was appointed to that position by a principal officer, *i.e.* an Attorney General, and could only be removed from that position by a principal officer, *i.e.* an Attorney General and (2) an Attorney General removed Appellant from her position. Thus, there is also no serious dispute that Appellant was removed pursuant to a use of the Attorney General's Article II authority. *See, e.g.*, *Duenas v. Garland*, 78 F.4th 1069, 1074 (9th Cir. 2023) (noting that "there can be no doubt that the Attorney General enjoys the power to remove Immigration Judges …, just as he or she

---

[1] The Administrative Judge has repeatedly—and disturbingly—mischaracterized or misrepresented the Agency's position on this issue, almost to the point of doing so intentionally or deliberately for an unknown larger purpose. More recently, the Administrative Judge knowingly misstated the record by claiming that the Agency filed an untimely discovery response and, thus, waived any objections, even though the Administrative Judge had granted an extension of the response deadline which the Agency met. *See* IAF, Tab 33. The Administrative Judge has also refused to correct that error even after the Agency filed a Motion to Reconsider. The Administrative Judge's conduct so far in this case raises potentially troubling issues that are beyond the scope of this filing. Nevertheless, if necessary and appropriate, the Agency is prepared to defend its entitlement to a fair and unbiased process consistent with the law. *See, e.g.*, *Burton v. Veterans Affairs*, 35 M.S.P.R. 52, 54 (1987) (noting that an Administrative Judge's failure to consider Agency arguments required a remand of the case).

[2] The Administrative Judge himself seems to have acknowledged the legal error as he has mused repeatedly that the Attorney General should be deposed because she *did* exercise authority in removing Appellant. Respectfully, the Administrative Judge cannot have it both ways. Either the Attorney General exercised her authority under Article II in removing Appellant or she did not. And, if the Administrative Judge believes the Attorney General did not exercise such authority, then there is no reason to depose her in this case.

enjoys the power to appoint them").

Further, although the Office of Personnel Management ("OPM") has prescribed regulations governing RIFs, OPM cannot usurp or restrict the Attorney General's constitutional authority to appoint and remove her inferior officers. *See* 5 U.S.C. § 3502(a); 5 C.F.R Part 351. Thus, it is the position of the Agency that the removal of an inferior officer of the Attorney General is, in the absence of her approval, constitutionally void *ab initio*. Following this line of reasoning, Appellant's yet-to-be identified defects in the Agency's adherence to OPM regulations concerning RIFs do not, in themselves, warrant vacating the Attorney General's underlying decision to remove her from office.

No express invocation of Article II by the Attorney General is needed for the removal of an inferior officer. When the Attorney General removes an inferior officer, she self-evidently invokes her Article II authority. Indeed, there is no other authority to remove an inferior officer, and the lack of a ministerial citation to Article II does not negate is applicability; executive actions are presumed to operate within the constitutional framework. *See*, *e.g.*, *Rosemond v. Hudgins*, 92 F.4th 518, 527 (4th Cir. 2024) (recognizing that, hypothetically, the President could proclaim at a press conference in the Rose Garden that he has pardoned a particular individual, and that would be a valid act under Article II of the Constitution, even absent a writing). Inasmuch as the President need not expressly invoke the Constitution when he exercises his constitutional rights, i.e., to grant pardons, to be the Commander-in-Chief, to make treaties, etc., the Attorney General likewise need not expressly invoke the Constitution when she exercises such rights. Thus, for the reasons previously articulated to the MSPB, this appeal should be immediately dismissed as Appellant, as an inferior officer, was subject to at-will dismissal by the Attorney General under Article II of the Constitution.

Add.038

In the event that the Administrative Judge declines to immediately dismiss this appeal, the Agency maintains that he should certify such decision for an interlocutory appeal and stay proceedings pending the disposition of that review. Although the Administrative Judges have significant discretion when certifying interlocutory appeals to the MSPB in any given case, the constitutional arguments of the type the Agency advances here satisfy the criteria for interlocutory review. An Administrative Judge "may permit [an interlocutory] appeal if he or she determines that the issue presented in it is of such importance to the proceeding that it requires the Board's immediate attention." 5 C.F.R. § 1201.91. Pursuant to MSPB regulations, two familiar inquiries govern that determination: (1) The issue must "involve[] an important question of law or policy about which there is substantial ground for difference of opinion," and (2) "[a]n immediate ruling [must] materially advance the completion of the proceeding, or the denial of an immediate ruling will cause undue harm to a party or the public." 5 C.F.R. § 1201.92. If an Administrative Judge grants a motion for interlocutory appeal, then he "has the authority to proceed with or to stay the processing of the appeal while an interlocutory appeal is pending with the Board." 5 C.F.R. § 1201.93(c) (explaining the MSPB may also stay the appeal if the Administrative Judge does not do so); *see* 6 West's Fed. Admin. Prac. § 6715 (2025) (describing the interlocutory appeal procedures).

The constitutional arguments addressed above involve important questions of law and policy. The legal questions roughly boil down to whether specific employees, i.e., Appellate Immigration Judges, wield executive power; whether they can continue to do so notwithstanding that the Constitution vests "[t]he executive Power" in the President, U.S. Const. art. II, § 1, cl. 1, and charges him alone with the responsibility to "take Care that the Laws be faithfully executed," *id.* § 3; and whether any constitutional problem can be avoided through the interpretation of one or

more relevant statutes. The answers to these questions have obvious policy implications. These questions are also substantially weightier than other issues that the MSPB has found important enough to justify an interlocutory appeal.[3] So they satisfy the first factor for an interlocutory appeal.

Second, an immediate ruling on the Agency's legal arguments would materially advance the underlying proceedings, while failure to rule expeditiously would unduly harm the Executive Branch. As the constitutional issues raised by the Agency is the underlying basis upon which Appellant was removed, resolving those issues would likely dispose of this matter. If that is so, proceeding with discovery would delay resolution of the case compared to immediately resolving those dispositive legal questions. Relatedly, Appellant has, through discovery, sought to depose high-ranking Executive Branch officials and obtain sensitive communications. Not only would that bog down this matter in protracted disputes about discovery, but such discovery is a unique harm to the Agency. *See Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 385 (2004) (emphasizing the unique "burden imposed by . . . discovery orders . . . directed to . . . senior Government officials"). To the extent the controlling legal questions can be answered without discovery, answering them first would materially advance the underlying proceedings.

Thus, because the factors for an interlocutory appeal are established here, the Administrative Judge should expedite the resolution of the constitutional issues and then, to the extent his decision does not resolve this matter in its entirety, certify his ruling for interlocutory appeal and stay these proceedings.

---

[3] *See, e.g., Pope v. Dep't of Transp.*, 10 M.S.P.B. 645, 645–46 (1982) (interlocutory appeal concerning the "criteria and standards . . . to be applied when a party requests the transfer of a case"); *Tinker AFSC/DP v. Dep't of the Air Force*, 121 M.S.P.R. 385, 387, 390-91 (2014) (interlocutory appeal concerning the burden of proof related to "so-called 'save haven' employees"); *Hasler v. Dep't of the Air Force*, 79 M.S.P.R. 415, 416 (1998) (interlocutory appeal regarding the Board's authority to order "a mental examination" under Federal Rule of Civil Procedure 35); *Crosby v. U.S. Postal Serv.*, 78 M.S.P.R. 263, 264 (1998) (interlocutory appear regarding the Board's "authority to award compensatory damages").

Respectfully submitted,

**/s/ Matthew T. Pizzo**
Matthew T. Pizzo
Special Counsel
Office of General Counsel
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2269
Falls Church, Virginia 22041
Matthew.Pizzo@usdoj.gov
Cell: 832-651-7522

Add.041

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**WASHINGTON REGIONAL OFFICE**

| | |
|---|---|
| ████████████ ) | Docket Number: DC-0351-25-1679-I-1 |
| Appellant, ) | |
| v. ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | Date: September 30, 2025 |
| Agency, ) | |
| and ) | |
| DIRECTOR OF THE OFFICE OF ) | |
| PERSONNEL MANAGEMENT, ) | |
| Intervenor. ) | |

**AGENCY'S RENEWED MOTION TO DISMISS APPEAL, MOTION TO STAY
DISCOVERY, AND MOTION TO CERTIFY INTERLOCUTORY APPEAL
AND STAY PROCEEDINGS**

The United States Department of Justice ("DOJ"), with its component the Executive Office for

Immigration Review ("EOIR" or the "Agency"), respectfully submits this renewed motion to

dismiss with the Administrative Judge of the Merit Systems Protection Board ("MSPB"). The

Agency further maintains that discovery be stayed pending the adjudication of the claims presented

herein. If the Administrative Judge denies the Agency's motion to dismiss, the Agency further

requests that the Administrative Judge certify that decision for an interlocutory appeal and stay

proceedings pending the disposition of that review. In order to avoid unnecessary repetition, the

Agency herein incorporates the positions articulated in its original "Agency's Motion to Dismiss,

Motion to Stay Discovery, Motion to Postpone or Cancel Status Conference, and Conditional

Motion to Certify Interlocutory Appeal and Stay Proceedings" (Initial Appeal File ("IAF"),

Tab 17).

As has been discussed at length, Appellant was previously appointed to be an Appellate

Immigration Judge of the Board of Immigration Appeals ("BIA") by the former Attorney General.

As such, she was duly removed from her position by the Attorney General, a prerogative of the

Attorney General's authority under Article II of the United States Constitution. Ultimately,

Add.042

Appellant's Notification of Personnel Action (Form SF-50) denotes that she retired from federal service In Lieu of Involuntary Action ("ILIA") (IAF, Tab 9, at 29). It is an uncontested fact that an inferior officer at the Department of Justice, such as Appellant was, may *only* be removed by the Attorney General pursuant to her authority under Article II of the Constitution. Indeed, no other individual at the Department of Justice possesses that authority; including EOIR's Director. To be sure, that removal authority may be exercised through multiple, different *procedures—e.g.* at will, a Reduction in Force ("RIF") action, notice under 5 U.S.C. § 7513, or, in cases involving an administrative law judge, a hearing under 5 U.S.C. § 7521—at the Attorney General's discretion. Indeed, there is no requirement in the Constitution or case law that the President through a principal officer has to use any particular method to remove an inferior officer. But, the use of any particular method or procedure for effectuating a removal does not—and cannot—change the underlying fact that the removal authority being exercised is the Attorney General's constitutional authority to remove an inferior officer. While the Agency fully rejects Appellant's perceived defects in the RIF procedures employed by the Agency, the Attorney General's Article II imprimatur is, in itself, sufficient to uphold the removal action. Thus, Appellant's yet-to-be demonstrated alleged defects in following regulatory RIF procedures cannot support a vacatur of the Attorney General's decision to remove her from office.

On August 26, 2025, the Administrative Judge issued an "Order Denying Agency Motion To Dismiss, Motion To Certify Interlocutory Appeal, And Motion To Stay" (IAF, Tab 27). In his Order, the Administrative Judge observed that "[a]ssuming without finding that [Appellate Immigration Judges] are in fact inferior officers within the meaning of Article II, the [A]gency and [the Office of Personnel Management ("OPM")] are essentially challenging the constitutionality of Title 5 by claiming that the [Civil Service Reform Act's ("CSRA's")] removal and appeal

Add.043

protections that apply to an 'employee' like the appellant are unconstitutional because they violate the President's authority to remove inferior offices "at will" under Article II" (IAF, Tab 27, at 8). It is not seriously disputed that (1) Appellant occupied an inferior officer position, was appointed to that position by a principal officer, *i.e.* an Attorney General, and could only be removed from that position by a principal officer, *i.e.* an Attorney General and (2) an Attorney General removed Appellant from her position. Thus, there is also no serious dispute that Appellant was removed pursuant to a use of the Attorney General's Article II authority. *See, e.g.*, *Duenas v. Garland*, 78 F.4th 1069, 1074 (9th Cir. 2023) (noting that "there can be no doubt that the Attorney General enjoys the power to remove Immigration Judges …, just as he or she enjoys the power to appoint them"). Nonetheless, the Administrative Judge held that "[n]otwithstanding the [A]gency's claims, however, [he] ha[s] no authority to invalidate the statutory provisions that provide the [A]ppellant a right of appeal under the CSRA based on a claim that these provisions violate Article II of the Constitution" (IAF, Tab 27, at 8).

On September 26, 2025, the DOJ's Office of Legal Counsel issued its Memorandum Opinion for the Counsel to the President, T. Elliot Gaiser, Assistant Attorney General, Office of Legal Counsel, Re: The Merit Systems Protection Board's Authority to Adjudicate Constitutional Questions within an Administrative Proceeding, 49 Op. O.L.C. __ (Sept. 26, 2025) ("OLC Opinion") (attached). The OLC, exercising authority delegated by the Attorney General, provides binding legal advice within the Executive Branch. *See* 28 U.S.C. § 511; 28 C.F.R. § 0.25(a); Memorandum Opinion for the Acting Assistant Attorney General Criminal Division, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, Re: Reconsidering Whether The Wire Act Applies To Non-Sports Gambling, 42 Op. O.L.C. 158, 176, 2018 WL 7080165, at *12 (Nov. 2, 2018); *accord Casa de Maryland v. U.S. Dept. of Homeland Security*, 924 F.3d 684, 692

Add.044

n.1 (4th Cir. 2019) ("Although not binding on [Article III] courts, OLC opinions reflect the legal position of the executive branch and are generally viewed as providing *binding* interpretive guidance for executive agencies." (cleaned up) (emphasis added)); *cf. Smith v. Jackson*, 246 U.S. 388, 389-91 (1918) (holding "that any doubt which [an Executive Branch official] might have had [about following a law] should have been subordinated. . . to the ruling of the Attorney General").

The OLC has reached the conclusion that the Administrative Judges of the Board "must adjudicate the constitutional issues raised by the Agencies." OLC Opinion at 12. Further, the OLC Opinion should be considered binding upon the MSPB. *See Cherichel v. Holder*, 591 F.3d 1002, 1016 n. 17 (8th Cir.2010) (noting that "OLC opinions are generally binding on the Executive branch"); *see also United States v. Arizona*, 641 F.3d 339, 385 n. 16 (9th Cir.2011) ("Office of Legal Counsel opinions are generally viewed as providing binding interpretive guidance for executive agencies and reflecting the legal position of the executive branch." (internal quotation marks, citations, and alterations omitted)), *aff'd in part, rev'd in part and remanded on other grounds*, 567 U.S. 387 (2012); *Tenaska Washington Partners II, L.P. v. United States*, 34 Fed. Cl. 434, 440 (1995) (recognizing that the OLC Memorandum is binding on the Department of Justice and other Executive Branch agencies).

The OLC Opinion, which constitutes the official stance of the Executive Branch, speaks for itself: "[T]he MSPB administrative judges must adjudicate the constitutional issues raised by the Agencies." OLC Opinion at 12. The OLC, considering MSPB precedential decisions such as *Davis-Clewis v. Department of Veterans Affairs*, 2024 MSPB 5, and *Malone v. Department of Justice*, 14 M.S.P.R. 403, 406 (1983), arrived at the conclusion that, even if "agency adjudications are generally ill suited to address structural challenges to their own enabling acts," "an agency's intimate familiarity with the statutes and regulations it administers may make it particularly well

Add.045

suited to address most other constitutional questions—even where such challenges could be made by a large group of individual plaintiffs." OLC Opinion at 9 (cleaned up). The binding OLC Opinion is undeniable intervening authority that, at a minimum, the Administrative Judge's order of August 26, 2025, *must* be vacated and amended as it does not represent the legal position of the Executive Branch. While the OLC Opinion does not address the precise issue of whether Appellate Immigration Judges are "inferior officers" who are subject to at-will removal by the Attorney General, the Agency otherwise maintains, for the reasons set forth in its prior filings, the Administrative Judge should dismiss the Appellant's appeal and uphold the removal action because it was a proper exercise of the Attorney General's constitutional authority.

Further, although the OPM has prescribed regulations governing Reductions In Force ("RIFs"), OPM cannot usurp or restrict the Attorney General's constitutional authority to appoint and remove her inferior officers. *See* 5 U.S.C. § 3502(a); 5 C.F.R Part 351. Thus, it is the position of the Agency that the removal of an inferior officer of the Attorney General is, in the absence of her approval, constitutionally void *ab initio*. Following this line of reasoning, Appellant's yet-to-be identified defects in the Agency's adherence to OPM regulations concerning RIFs do not, in themselves, warrant vacating the Attorney General's underlying decision to remove her from office. Thus, for the reasons previously articulated to the MSPB, this appeal should be immediately dismissed as Appellant, as an inferior officer, was subject to at-will dismissal by the Attorney General under Article II of the Constitution.

In the event that the Administrative Judge declines to immediately dismiss this appeal, the Agency maintains that he should certify such decision for an interlocutory appeal and stay proceedings pending the disposition of that review. Although the Administrative Judges have significant discretion when certifying interlocutory appeals to the MSPB in any given case, the

constitutional arguments of the type the Agency advances here satisfy the criteria for interlocutory review. An Administrative Judge "may permit [an interlocutory] appeal if he or she determines that the issue presented in it is of such importance to the proceeding that it requires the Board's immediate attention." 5 C.F.R. § 1201.91. Pursuant to MSPB regulations, two familiar inquiries govern that determination: (1) The issue must "involve[] an important question of law or policy about which there is substantial ground for difference of opinion," and (2) "[a]n immediate ruling [must] materially advance the completion of the proceeding, or the denial of an immediate ruling will cause undue harm to a party or the public." 5 C.F.R. § 1201.92. If an Administrative Judge grants a motion for interlocutory appeal, then he "has the authority to proceed with or to stay the processing of the appeal while an interlocutory appeal is pending with the Board." 5 C.F.R. § 1201.93(c) (explaining the MSPB may also stay the appeal if the Administrative Judge does not do so); *see* 6 West's Fed. Admin. Prac. § 6715 (2025) (describing the interlocutory appeal procedures).

The constitutional arguments addressed above involve important questions of law and policy. The legal questions roughly boil down to whether specific employees, i.e., Appellate Immigration Judges, wield executive power; whether they can continue to do so notwithstanding that the Constitution vests "[t]he executive Power" in the President, U.S. Const. art. II, § 1, cl. 1, and charges him alone with the responsibility to "take Care that the Laws be faithfully executed," *id*. § 3; and whether any constitutional problem can be avoided through the interpretation of one or more relevant statutes. The answers to these questions have obvious policy implications. These questions are also substantially weightier than other issues that the MSPB has found important

Add.047

enough to justify an interlocutory appeal.[1] So they satisfy the first factor for an interlocutory appeal.

Second, an immediate ruling on the Agency's legal arguments would materially advance the underlying proceedings, while failure to rule expeditiously would unduly harm the Executive Branch. As the constitutional issues raised by the Agency is the underlying basis upon which Appellant was removed, resolving those issues would likely dispose of this matter. If that is so, proceeding with discovery would delay resolution of the case compared to immediately resolving those dispositive legal questions. Relatedly, Appellant has, through discovery, sought to depose high-ranking Executive Branch officials and obtain sensitive communications. Not only would that bog down this matter in protracted disputes about discovery, but such discovery is a unique harm to the Agency. *See Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 385 (2004) (emphasizing the unique "burden imposed by . . . discovery orders . . . directed to . . . senior Government officials"). To the extent the controlling legal questions can be answered without discovery, answering them first would materially advance the underlying proceedings.

Thus, because the factors for an interlocutory appeal are established here, the Administrative Judge should expedite the resolution of the constitutional issues and then, to the extent his decision does not resolve this matter in its entirety, certify his ruling for interlocutory appeal and stay these proceedings.

---

[1] *See, e.g.*, *Pope v. Dep't of Transp.*, 10 M.S.P.B. 645, 645–46 (1982) (interlocutory appeal concerning the "criteria and standards . . . to be applied when a party requests the transfer of a case"); *Tinker AFSC/DP v. Dep't of the Air Force*, 121 M.S.P.R. 385, 387, 390-91 (2014) (interlocutory appeal concerning the burden of proof related to "so-called 'save haven' employees"); *Hasler v. Dep't of the Air Force*, 79 M.S.P.R. 415, 416 (1998) (interlocutory appeal regarding the Board's authority to order "a mental examination" under Federal Rule of Civil Procedure 35); *Crosby v. U.S. Postal Serv.*, 78 M.S.P.R. 263, 264 (1998) (interlocutory appear regarding the Board's "authority to award compensatory damages").

Respectfully submitted,

**/s/ Matthew T. Pizzo**
Matthew T. Pizzo
Special Counsel
Office of General Counsel
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2269
Falls Church, Virginia 22041
Matthew.Pizzo@usdoj.gov
Cell: 832-651-7522

Add.049

# Elizabeth Oyer v. Department of Justice

## Docket # DC-0752-25-2372-I-1

## MOTION FOR RECONSIDERATION OF THE INITIAL DECISION

### Summary Page

Case Title :     Elizabeth Oyer v. Department of Justice

Docket Number :     DC-0752-25-2372-I-1

Pleading Title :     MOTION FOR RECONSIDERATION OF THE INITIAL DECISION

Filer's Name :     Michael Martinez

Filer's Pleading Role :     Appellant

## Details about the supporting documentation

| # | Title / Description | Mode of Delivery |
|---|---|---|
| 1 | EXHIBIT 1 (Oyer).pdf | Uploaded |

Add.050

Table of Contents

Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Interview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Body . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
EXHIBIT 1 (Oyer) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Add.051

1. Enter a brief title for your pleading.

MOTION FOR RECONSIDERATION OF THE INITIAL DECISION

_____

2. Does your pleading assert facts that you know from your personal knowledge?

No

_____

3. Do you declare, under penalty of perjury, that the facts stated in this pleading are true and correct?

No

_____

**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**DALLAS REGIONAL OFFICE**

| | |
|---|---|
| ELIZABETH OYER, | Case No. DC-0351-25-1679-I-1 |
| *Appellant*, | **APPELLANT'S MOTION FOR RECONSIDERATION OF THE INITIAL DECISION OF NOVEMBER 20, 2025, GRANTING DISMISSAL WITHOUT PREJUDICE** |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| *Agency*. | |
| and | |
| DIRECTOR OF THE OFFICE OF PERSONNEL MANAGEMENT, | |
| *Intervenor* | |

Because the Agency has effectively conceded in other litigation that the prerequisites for an Article II removal were not satisfied under the undisputed facts of this case, Appellant Elizabeth Oyer respectfully moves for reconsideration of the Chief Administrative Judge's Initial Decision of November 20, 2025, which dismissed the proceeding without prejudice subject to automatic refiling by the Board. The premise of that ruling was "[w]hether an agency head is authorized by Article II of the Constitution" to remove certain employees "without restriction is an important question of law that, when answered, will materially advance the completion of this proceeding." Tab 31, Initial Decision 3. But that question, however potentially pertinent to other cases currently pending before the MSPB, is irrelevant here. As Appellant Oyer argued in her response to the Administrative Judge's Order to show Cause (Tab 30 at 7-8), the undisputed facts show that Appellant Oyer was *not* removed by the "agency head" (the Attorney General), but rather, by the Deputy Attorney General. Tab 17 at 10 (showing removal order signed by Deputy Attorney

1
Add.053

General Todd Blanche, not Attorney General Pam Bondi). Accordingly, the extent of the agency head's theoretical removal powers under Article II is immaterial here.

Indeed, the Department of Justice has recently represented in another proceeding that "it is the position of the Agency that the removal of an inferior officer of the Attorney General is, in the absence of her approval, constitutionally void *ab initio*." *[Redacted] v. Department of Justice*, MSPB Dkt. No. DC-0351-25-1679-I-1, Tab 32 at 8 (Ex. 1). Yet, though the Agency has insisted that Appellant Oyer is an inferior officer who was removed pursuant to Article II, the Agency's own documents show that she was not removed by Attorney General. Thus, even if the Agency's Article II theory is adopted by the Board, Appellant's own removal will have been, in the Agency's words, "*void ab initio*." Because the Agency's Article II defense is self-defeating on the particular facts of this case, resolution of the questions pending before the Board in *Megan Jackler v. Department of Justice*, MSPB Docket No. DA-0752-25-0330-I-1, and *Brandon Jaroch v. Department of Justice*, MSPB Docket No. DA-0752-25-0328-I-1, will do nothing to materially advance the completion of this proceeding.

Because there is no reason for further delay, Appellant respectfully asks that her appeal be immediately reinstated and that it proceed to prompt adjudication.

Date: November 24, 2025

Respectfully submitted,

_____
James M. Eisenmann

_____
Alex S. Dornacker

ALDEN LAW GROUP, PLLC
1850 M St., NW
Suite 901

2
Add.054

Washington, DC 20036
(202) 463-0300 (phone)
(202) 463-0301 (fax)

Michael C. Martinez
Cynthia Liao
Elena S. Goldstein
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
Telephone: (202) 448-9090
Facsimile: 202-796-4426
mmartinez@democracyforward.org
cliao@democracyforward.org
elenagoldstein@democracyforward.org

*Attorneys for Appellant*

3
Add.055